(No. 40007.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, *vs.* JOSE LUNA, Appellant.

*Opinion filed May 18, 1967.*

300

Ward, J., took no part.

Gerald W. Getty, Public Defender, of Chicago, (Frederick F. Cohn and James J. Doherty, Assistant Public Defenders, of counsel,) for appellant.

William G. Clark, Attorney General, of Springfield, and Daniel P. Ward, State's Attorney, of Chicago, (Fred G. Leach, Assistant Attorney General, and Elmer C. Kissane, and Matthew J. Moran, Assistant State's Attorneys, of counsel,) for the People.

Mr. Chief Justice Solfisburg delivered the opinion of the court:

The defendant, Jose Luna, was indicted in the circuit court of Cook County for the sale of narcotics, tried by a jury, found guilty, and sentenced to the penitentiary for a term of 15 to 30 years. The Appellate Court, First District, affirmed his conviction, (69 Ill. App. 2d 291,) and we have granted leave to appeal.

The crucial issues in this case revolve upon the use of defendant's prior testimony on a motion to suppress for the purpose of impeachment at the trial. It appears from the record that the defendant was introduced to Paul Hemphill, an Illinois narcotics inspector, by defendant's friend, an informer named Galloway. The State's evidence indicates that Hemphill gave defendant $1,000 and that defendant took the money and later gave Hemphill a package of

heroin. The exact testimony relating to the entire transaction is unnecessary for a consideration of the legal issues involved in this appeal.

Prior to the trial defendant moved to suppress a confession given by him, and Judge Landesman sustained the motion to suppress. Thereafter the case was assigned to another judge for trial. Defendant testified in his own behalf and on cross-examination the State was permitted to interrogate defendant over objection as to prior inconsistent statements that he had made at the hearing on the motion to suppress.

After judgment defendant moved for a transcript of the hearing on the motion to suppress and also sought to make the confession a part of the record. Both motions were denied by the trial court.

On this appeal defendant argues that, as an indigent, he was denied equal protection of the laws by being denied a free transcript of the hearing on the motion to suppress for the purposes of this appeal. Pursuant to our request on oral argument the State has filed a complete transcript of the preliminary hearing and we have considered this transcript as part of the record.

At his trial Luna testified that Galloway often asked if he knew anyone that sold narcotics, and on September 7, 1962, Galloway introduced him to his partner, Hemphill. He further testified that Hemphill and Galloway said they wanted to do business and Luna arranged a meeting with one Esparza; that the merchandise discussed was drugs. Esparza previously called Luna and said he had drugs to sell. The defendant stated that he did not know how much it would cost. Defendant's further testimony was that, on September 8, 1962, Hemphill gave Luna a bundle of money to give to one Alvarado. Luna did not count the money. In return for the money, Alvarado gave Luna $100 and a brown package. The defendant delivered both to Hemphill

but was told by Hemphill to keep the $100. Luna stated that he did not know anything about the sale of drugs prior to this transaction.

On cross-examination, Luna said that he did not know how much money was given to him by Hemphill and he did not remember testifying on July 1, 1963, at the hearing on the motion to suppress the confession that he was given $1,000 and that he counted it. He also testified that he did not remember previously testifying that Hemphill gave him $1,000 to buy an ounce of heroin. Luna further stated that he did not recall previously testifying that he kept $100 in his pocket when he returned with the package to Hemphill.

In rebuttal by the State, it was stipulated that if the court reporter were called, he would testify that on July 1, 1963, the defendant testified: (1) that he was given $1,000 and counted the money; (2) he knew the $1,000 was to purchase one ounce of heroin; (3) when he returned to Hemphill, Luna put $100 in his pocket.

It is clear that a defendant who takes the stand may ordinarily be impeached by proof of prior inconsistent statements. (*People* v. *Bush,* 29 Ill.8d 367; *People* v. *Morgan,* 28 Ill.2d 55.) However, we have held that as a general rule it would be improper to attempt to impeach a defendant by use of an unlawfully obtained confession. *People* v. *Adams,* 1 Ill.2d 446; *People* v. *Maggio,* 324 Ill. 516; *People* v. *Sweeney,* 304 Ill. 502.

The precise issue presented by this appeal is whether it is proper to impeach a defendant by use of his prior testimony in support of his motion to suppress when that testimony is substantially the same as the confession. We have found no case directly in point, and analogous cases would seem to lead to different results. Defendant relies on *Safarik* v. *United States,* (8th cir.) 62 F.2d 892, where the prosecution attempted to introduce in evidence statements made by defendant in support of a motion to suppress illegally seized evidence. The court said:

"It being established that the constitutional guaranties of the defendants had been invaded by this first search and seizure, they were, of course, warranted in asserting their constitutional rights by such means as would be effective. For the purpose of securing the rights guaranteed them by the Constitution, they presented this motion with the supporting affidavits. It is, however, argued that, under the well-established rules of evidence, the statements contained in the motion and affidavits were admissions against interest and hence admissible in evidence. Conceding, as we must, that the showing made by the defendants was essential to securing to them the protection of the Constitution, then a rule of evidence, and not the Constitution of the United States, would be the supreme law of the land. To so hold would render the constitutional guaranties sonorous but impotent phrases. If this were the law, searches and seizures of the most drastic and unreasonable character, even invading the privacy of the home, might be perpetrated in flagrant violation of the constitutional guaranties, and even though the property so seized were, on proper motion, returned to the owner and its use as evidence suppressed, yet the same results could be secured by introducing, as in the instant case, the motion papers containing the admissions with reference thereto, thereby effectually invading the privacy of the individual guaranteed by the Constitution. But, as said by the Supreme Court in *Gouled* v. *United States, supra,* 'A rule of practice must not be allowed for any technical reason to prevail over a constitutional right.'

\* \* \*

"If, in a case where the search and seizure has been adjudged to be unreasonable and violative of the Fourth Amendment to the Constitution, the motion to suppress with the supporting affidavits, can be used by the government for the purpose of proving the guilt of the defendant, then, in order to avail himself of the guaranty afforded by the Fourth Amendment, he must waive the constitutional

guaranty afforded him by the Fifth Amendment. If the government's contention be sustained, then the moment the defendants in this case made affidavits essential to the assertion of their rights under the Fourth Amendment, they became witnesses against themselves. To so hold would, for practical purposes, render unavailing the guaranties of both the Fourth and Fifth Amendments."

The State seeks to distinguish *Safarik* on the ground that the prosecution there sought to introduce the statements made by defendant as admissions against interest rather than as impeachment, and relies on *Heller* v. *United States,* (7th cir.) 57 F.2d 627; *United States* v. *Curry* (2d cir.) 358 F.2d 904; and *Walder* v. *United States,* 347 U.S. 62, 74 S. Ct. 354, 98 L. Ed. 503, to justify the admission of the impeaching testimony here.

In *Heller* the defendant moved to suppress evidence seized from his residence. On the motion to suppress he testified that the residence searched was his, and the motion to suppress was denied. On appeal a divided court held that his admission of ownership of the residence could be introduced as an admission against interest. The *Heller* case is not controlling where, as here, the motion to suppress was granted.

In *United States* v. *Curry,* 358 F.2d 904, the defendant moved to suppress his confession, and at his first trial the motion was denied, and his confession was admitted in evidence. A mistrial was declared because of the illness of the trial judge, and on the second trial the motion to suppress was renewed. The trial judge ruled that the confession should be suppressed, but that it might be used to impeach on matters collateral to the issue of guilt. (358 F.2d at 909.) On appeal the court held that the confessions ought not to have been suppressed, and therefore there was no error in using them to impeach the defendant. The court did say, however, that it was proper to use a suppressed statement

for the purposes of impeachment on collateral matters, and not to prove defendant's guilt, if there was good reason to believe that a prior inconsistent statement was accurate and voluntary.

In *Walder* v. *United States,* 347 U.S. 62, 74 S. Ct. 354, 98 L. Ed. 503, defendant testified that he had not at any time possessed narcotics. The government was then permitted to impeach his testimony by evidence that an officer had seized narcotics in his possession approximately two years before, although in a prior case the evidence had been suppressed. The United States Supreme Court permitted this impeachment of defendant's sweeping statements for the sole purpose of affecting his credibility but not for the purpose of proving his guilt.

The court in *Inge* v. *United States,* (D.C. cir.) 356 F.2d 345, considered the import of the *Walder* decision, when it reversed a conviction on the ground that an illegally procured statement was used for impeachment. The court stated at page 349:

"The Supreme Court has held that in some circumstances an accused can be impeached by use of otherwise inadmissible evidence. *Walder* v. *United States,* 347 U.S. 62 (1954). But the court cautioned that a defendant 'must be free to deny all the elements of the case against him without thereby giving leave to the Government to introduce by way of rebuttal evidence illegally secured by it, and therefore not available for its case in chief.' Since then we have held that an inadmissible statement can be used only when the defendant makes 'sweeping claims' that go far beyond the crime charged, is impeached on a statement relating to 'lawful proper acts' 'collateral' to the issues before the jury, or is questioned about 'minor points.' In such situations, impeachment of the defendant affects only his credibility, since the truth of the impeaching statement does not itself tend to establish guilt."

In *Johnson* v. *United States*, (D.C. cir.) 344 F.2d 163, the court explained the limitations of *Walder* in a similar manner stating:

"The purported question in this appeal is whether the Government's use of the confession in rebuttal to Johnson's testimony fell within the limited exception to inadmissibility approved in *Walder* v. *United States*, 347 U.S. 62, 74 S. Ct. 354, 98 L. Ed. 503 (1954).

       *    *    *

"In *Walder* v. *U.S.*, 347 U.S. 62, 74 S. Ct. 354, 98 L. Ed. 503 (1954), the Court recognized an exception to the rule which forbids the admission of ill-gotten evidence. There, the defendant testified on direct that he had 'never sold any narcotics to anyone in my life' and had never possessed narcotics. *Id.* at 63, 74 S. Ct. at 355. On cross-examination the Government asked whether he had been in possession of certain narcotics on an occasion unconnected with the indictment being tried. When he denied this, the Government was allowed to impeach him by introducing evidence of the unconnected incident despite the fact that the narcotics in question had been seized illegally. The Supreme Court affirmed this action on the ground that the defendant had voluntarily made sweeping claims which 'went beyond a mere denial of complicity in the crimes of which he was charged,' and that the Government was entitled to protect itself by 'contradiction of his untruths.' 347 U.S. at 65, 74 S. Ct. 354. The Court quoted *Michelson* v. *United States*, 335 U.S. 469, 479, 69 S. Ct. 213, 93 L. Ed. 168 (1948) : 'The price a defendant must pay for attempting to prove his good name is to throw open the entire subject which the law has kept closed for his benefit and to make himself vulnerable where the law otherwise shields him.' Thus in choosing to do more than 'meet the accusation against him' (347 U.S. at 65, 74 S. Ct. 354) by putting in issue matters independent of the offense charged, Walder had opened himself to impeachment by evidence relating

to such independent matters, although that evidence would have been inadmissible on a trial concerned directly with the unconnected events.

"In the present case, Johnson did not 'of his own accord' exceed the bounds of testimony necessary to his defense by making 'sweeping claims.' He merely offered his own version of the events charged in the indictment. Moreover, the evidence used purportedly to impeach him was a confession of the very charge on trial, raising a clear likelihood of prejudice not present when, as in *Walder,* the impeaching evidence is unrelated to the indictment. Thus the *Walder* exception does not allow the testimony regarding Johnson's confession. '[T]he Government could no more work in this evidence on cross-examination than it could on its case in chief.' The officer's testimony directly challenged the innocence, not merely the credibility, of the defendant. To permit the Government to introduce illegally obtained statements which bear directly on a defendant's guilt or innocence in the name of 'impeachment' would seriously jeopardize the important substantive policies and functions underlying the established exclusionary rules."

In the present case the impeaching statements related directly to the guilt of the accused. Defendant's testimony in chief was to the effect that he was a mere conduit in that he received a bundle containing an unknown sum of money from Hemphill to give to one Alvarado; that he received a brown package and $100 from Alvarado which he returned to Hemphill. The statements used for purposes of impeachment were that defendant had knowingly received $1,000 for the purpose of purchasing heroin, and that after the purchase he put the $100 in his pocket. These are not mere collateral matters but deal directly with the guilty knowledge of defendant.

It is our opinion that if the suppressed confession itself had been used to impeach this testimony of defendant it would have been improper and would have been prejudicial

error under the reasoning of the foregoing cases. We must next determine if the same result must obtain when defendant's testimony at the hearing on the motion to suppress is used for impeachment, when that testimony is substantially the same as the suppressed confession.

In order to avail himself of his constitutional rights under our procedure, defendant was compelled to move to suppress the confession. It also appears from the record that his testimony was essential on this motion. Defendant was therefore placed in the dilemma of either foregoing his constitutional right to a suppression of an unlawful confession, or of running the risk of his testimony being used against him at the trial. We think it is no answer to say that defendant need not have taken the stand at his trial. One ought not be forced to choose between availing himself of two equally valuable rights. (*Safarik* v. *United States,* (8th cir.) 62 F.2d 892.) This is unlike the situation in *Miller* v. *People,* 216 Ill. 309, where the defendant voluntarily availed himself of his right to testify at his first trial and the admissions were used against him at his second trial for the same offense. It was unnecessary for him to testify at his first trial in order to preserve to him all of his constitutional guaranties.

We believe that the ruling of the trial court in permitting the use of defendant's testimony in this case substantially dilutes the fundamental guaranties of both the Federal and Illinois constitutions, and constitutes reversible error. We express no opinion as to the permissibility of the use of testimony volunteered by defendant and unrelated to the suppressed confession.

Defendant also argues that the trial court erred in refusing to permit the introduction of evidence on the matter of entrapment and in refusing to instruct the jury on the matter of entrapment. We agree with the appellate court that in the absence of an offer of proof and because of the failure of counsel to apprise the trial judge concerning the

issue of entrapment, that no error was committed in this regard. We do not believe that the identical issue is apt to occur upon a new trial.

Because of the foregoing reasons the judgments of the trial and appellate courts are reversed and the cause remanded for a new trial.

*Reversed and remanded.*

Mr. JUSTICE WARD took no part in the consideration or decision of this case.