STATE OF NORTH CAROLINA v. WILLIAM NORMAN BARROW

No. 6926SC497

(Filed 19 November 1969)

1. **Criminal Law § 98— motion to sequester witnesses**

   Motion to sequester the witnesses is addressed to the discretion of the trial court, and the refusal of the motion is not reviewable.

2. **Criminal Law § 43; Homicide § 20— homicide prosecution — photograph of body — admissibility**

   In a homicide prosecution, the trial court properly admitted in evidence the photograph used by a State's witness to illustrate his testimony relating to the location and appearance of the body of deceased, such testimony being offered for the purpose of refuting defendant's contention that he acted in self-defense, where the court instructed the jury that the photograph was admitted for the sole purpose of illustrating the testimony of the witness and not as substantive evidence.

3. **Criminal Law §§ 75, 86, 89— impeachment of defendant — use of signed confession not admitted in evidence — waiver of objection**

   In a homicide prosecution in which the State offered evidence that defendant shot the deceased three times and defendant testified on direct examination that he shot the deceased one time in self-defense but could not remember shooting deceased a second and third time, the trial court did not err in allowing the solicitor, over objection, to cross-examine defendant from a signed statement, given by defendant to a police officer during an in-custody interrogation, in which defendant admitted he shot deceased three times, although the statement had not been admitted in evidence or found by the court to be in compliance with *Miranda v. Ari-*

*zona*, 384 U.S. 436, where (1) the record indicates defendant testified on cross-examination, without objection, that he gave a statement to the officer and (2) the trial court instructed the jury not to consider the solicitor's examination relating to the statement.

**4. Criminal Law § 162— objection to evidence — time of objection**

An objection to the admission of evidence is necessary to present defendant's contention that the evidence was incompetent, and defendant must ordinarily object to the question at the time it is asked and to the answer when given.

**5. Criminal Law § 162— objection to answer of witness**

Where objection is made not to the question but only to the answer of a witness, its exclusion is discretionary with the court.

**6. Criminal Law § 169— admission of evidence — harmless error**

The admission of testimony over objection is ordinarily harmless when testimony of the same import is theretofore or thereafter introduced without objection, or defendant introduces similar testimony himself, or the matter is proved by other competent evidence.

**7. Criminal Law § 167— prejudicial error — burden of proof**

The burden is on defendant not only to show error but also to show that the error complained of affected the result adversely to him.

BROCK, J., dissenting.

APPEAL by defendant from *Beal, S.J.*, at the 2 June 1969 Regular Schedule "D" Session of MECKLENBURG Superior Court.

By indictment proper in form, defendant was charged with the murder of one John Smith on 8 May 1969. Defendant pled not guilty. The evidence most favorable to the State tended to show:

Defendant resided in a rooming house at 204 N. McDowell Street in the City of Charlotte. On the afternoon of 8 May 1969, he was sitting in a chair on the front porch of the rooming house drinking Kool-Aid mixed with grain alcohol. Late in the afternoon, deceased, who lived next door, walked up to the edge of the porch, engaged the defendant in conversation, and then joined the defendant in sitting on the porch and drinking the spiked Kool-Aid. Between 7:30 and 8:00, leaving deceased sitting in a chair on the porch, defendant entered the house, went upstairs to his room, obtained a single-barreled shotgun, went back downstairs, went out through a side door and around to the front of the house, advanced to within twelve or fourteen feet of deceased who was still sitting in a chair on the porch, aimed the gun at deceased and shot him. Deceased arose from his chair and started in the front door of the house, at which time defendant reloaded his gun, moved closer to

deceased and shot him again. Defendant then went around the house, reentered at the side door, went upstairs and returned immediately to the front porch where he shot the deceased a third time as deceased lay on the floor in the doorway. Deceased died in the doorway from the gunshot wounds. No knife, gun or other weapon was found on or about the deceased's person.

Defendant, as a witness in his own behalf, testified to the following: Before defendant went upstairs the first time and got his gun, deceased asked defendant to loan him some money, and when defendant replied that he did not have any money, the deceased said, "I'm a pretty mean fellow. I'll take my knife and cut off your head if you don't give it to me." At that point, the deceased drew his knife but left and told the defendant he would be back in a few minutes. The deceased returned and continued to ask the defendant for money and threatened to do what he previously said he would do. Following this threat, defendant went upstairs, got his shotgun and returned to the front porch for purpose of scaring the deceased away. As defendant stopped at the steps to the front porch, deceased jumped out of his chair and "went for his pocket." Following this, defendant shot the deceased but did not remember firing any second or third shots.

The jury found defendant guilty of second-degree murder, and the court imposed a prison sentence of thirty years from which defendant appealed.

*Attorney General Robert Morgan and Staff Attorney Mrs. Christine Y. Denson for the State.*

*T. LaFontine Odom and Wallace C. Tyser, Jr., for defendant appellant.*

BRITT, J.

[1]  Defendant assigns as error the refusal of the trial judge to grant defendant's motion to sequester the State's witnesses. In *State v. Love,* 269 N.C. 691, 153 S.E. 2d 381, in a *per curiam* opinion, our Supreme Court said: "The appellant's first assignment of error challenges the Court's refusal to sequester the witnesses upon the appellant's motion. The refusal was in the Court's discretion and not reviewable. *State v. Spencer,* 239 N.C. 604, 80 S.E. 2d 670." The assignment of error is overruled.

[2]  Defendant next assigns as error the admission as evidence for purpose of illustrating certain testimony a photograph taken

very soon after the shooting showing deceased's body as it lay in the doorway of the rooming house. Defendant contends that the photograph was not relevant and material and that its only purpose was to inflame the jury.

In *State v. Atkinson*, 275 N.C. 288, 167 S.E. 2d 241, at page 311, our Supreme Court, in an opinion by Lake, J., said:

"In the present case, the jury was properly instructed that the photographs in question were allowed in evidence for the sole purpose of illustrating the testimony of witnesses and not as substantive evidence. See: *State v. Norris*, 242 N.C. 47, 86 S.E. 2d 916; *State v. Perry*, 212 N.C. 533, 193 S.E. 727. The fact that a photograph depicts a horrible, gruesome and revolting scene, indicating a vicious, calculated act of cruelty, malice or lust, does not render the photograph incompetent in evidence, when properly authenticated as a correct portrayal of conditions observed by and related by the witness who uses the photograph to illustrate his testimony. [Citation]

'Ordinarily, photographs are competent to be used by a witness to explain or illustrate anything it is competent for him to describe in words.' [Citation] * * * Thus, in a prosecution for homicide, photographs showing the condition of the body when found, the location where found and the surrounding conditions at the time the body was found are not rendered incompetent by their portrayal of the gruesome spectacle and horrifying events which the witness testifies they accurately portray. *State v. Stanley*, 227 N.C. 650, 44 S.E. 2d 196; *State v. Cade*, 215 N.C. 393, 2 S.E. 2d 7."

In the case before us the jury was properly instructed that the photograph complained of was admitted in evidence for the sole purpose of illustrating the testimony of the witness Walter Smith and not as substantive evidence. Testimony regarding the location of the body was relevant and material; defendant contended the deceased was advancing on him at the time of the shooting while the State contended the deceased, after the first shot was fired, was entering the house in an effort to get away from the defendant. The testimony of Walter Smith supported the State's contention and he was able to use the photograph to illustrate his testimony. The assignment of error is overruled.

[3] Defendant's assignments of error Nos. 10 and 11 (based on exceptions 10 and 11) are stated in his brief as follows: "The court committed error in allowing the solicitor to cross-examine the de-

fendant in regard to an allegedly incriminating statement made to Detective Fesperman of the Charlotte Police Department while the defendant was in custody without previously having determined in a hearing outside the presence of the jury that the defendant was warned of his constitutional rights and voluntarily waived them."

At the top of page 32, the record on appeal discloses that defendant on cross-examination and without objection testified to the following:

"I talked to Mr. Fesperman about this case, I said some things to him. I talked to him about the case and signed a written statement, but it wasn't too many words. I suppose I told Mr. Fesperman that I got three shells, one of which I put in the chamber of the shotgun and the other two I put in my pockets. I know I told him this; I had three shells. One of them was in the chamber of this shotgun and the other two were in my pocket. * * *"

Near the bottom of page 32 and on page 33, a continuation of defendant's cross-examination, the record on appeal discloses the following:

"* * * The only time I knowed anything about shooting him three times is when they said I shot him three times. Mr. Fesperman said that. He investigated the case. I don't remember telling Mr. Fesperman at 9:30 that night, which was within a hundred and twenty minutes after it happened, that after I shot him the first time I reloaded my gun, went on the porch, and shot him while he was lying down in the front door.

MR. ODOM: Objection. It appears the Solicitor is reading from a statement and trying to get in the back door what he couldn't get in the front door.

THE COURT: Objection overruled.

(DEFENDANT'S EXCEPTION #10)

I don't remember telling Mr. Fesperman that two hours after it happened. I don't remember whether I told Mr. Fesperman at the Charlotte Police Department that I had shot the man with this single-barreled shotgun the first time and then reloaded it and shot him a second time. I know I told him I shot the deceased one time. But this signature which I looked at a few minutes ago says William Norman Barrow. That's what I signed. This statement contains a sentence to the effect that after I had shot the man the first time, that I then reloaded the

shotgun and shot him the second time, I suppose, because I
was still scared. * * * I was scared and too angry I sup-
pose to remember shooting the man the third time. * * * I
don't remember anything about shooting the man the third time.
I don't remember whether I told Mr. Fesperman at the police
station at 9:30 on the night of May 8, 1969, that I shot the
man the third time."

Immediately thereafter, with further reference to defendant's
cross-examination, the record on appeal reveals the following:

"Q. Well, let me show you this paperwriting and ask you
whether or not it refreshes your recollection?

A.  I know I —

MR. ODOM:  I'm going to object to the paperwriting, your
Honor, and move to strike.

THE COURT:  Well, objection sustained.

MR. SCHWARTZ:  Your Honor, we want to show if he made
any prior inconsistent statements about this.

THE COURT:  He said he didn't remember.

MR. SCHWARTZ:  Well, I would like to see if I could refresh
his recollection.

THE COURT:  I'll let you ask him if it refreshes his recollec-
tion.

MR. SCHWARTZ:  Yes, sir.

Q.  (By Mr. Schwartz):  This statement here with your signa-
ture on it at the bottom, do these last few lines on this state-
ment refresh your recollection about it, starting right here? I
then, and from there on.

MR. ODOM:  I object again to the reference to the state-
ment used by the Solicitor.

THE COURT:  Overruled.

MR. ODOM:  Exception.

A.  These phrases here was supposed to be made what first hap-
pened.

THE COURT:  Objection sustained.

Q.  (By Mr. Schwartz):  Well, did you tell Mr. Fesperman
then that —

THE COURT:  Wait just a minute. Now, members of the

jury, you will not consider any statements that the defendant has made about the paperwriting, whether it refreshes his memory or whether it doesn't.

Q. (By Mr. Schwartz): Well, what did you tell Mr. Fesperman the night that this happened at the police station, Mr. Barrow?

A. He told me that I didn't have to make any statements if I didn't want to, you know. I remember him telling me that. And he asked me some details on it, and I told him a few things. He asked me if I could think of any more to tell and I said no.

Q. (By Mr. Schwartz): What were those few things that you told him?

A. I told him when he first came up there —

THE COURT: Objection. The Court on its own motion sustains the objection and orders its stricken from the record, anything about that examination as to what's on that paper. Ladies and gentlemen of the jury, you will not consider any of the examination at all about what's on that paper.

(DEFENDANT'S EXCEPTION #11)"

Defendant contends that the foregoing violated his constitutional rights as declared in *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966); *Jackson v. Denno*, 378 U.S. 368, 84 S. Ct. 1774, 12 L. Ed. 2d 908 (1964); *State v. Edwards*, 274 N.C. 431, 163 S.E. 2d 767; and *State v. Walker*, 266 N.C. 269, 145 S.E. 2d 833. We adhere to the constitutional principles declared in these cases but do not think that they were violated in the instant case.

[4-6] An objection to the admission of evidence is necessary to present defendant's contention that the evidence was incompetent and defendant must ordinarily object to the question at the time it is asked and to the answer when given. 3 Strong, N.C. Index 2d, Criminal Law, § 162, pp. 114 & 115. Where objection is not made to the question but only to the answer of a witness, its exclusion is discretionary with the court. *State v. Fentress*, 230 N.C. 248, 52 S.E. 2d 795. The admission of testimony over objection is ordinarily harmless when testimony of the same import is theretofore or thereafter introduced without objection, *State v. Creech*, 265 N.C. 730, 145 S.E. 2d 6, or defendant introduces similar testimony himself, *State v. Adams*, 245 N.C. 344, 95 S.E. 2d 902, or the matter is proved by other competent evidence, *State v. Brannon*, 234 N.C. 474, 67 S.E. 2d 633.

**[3]** We are unable to determine from the record the question or answer that defendant's exception No. 10 relates to. On direct examination defendant admitted shooting deceased one time; on cross-examination the solicitor was attempting to get the defendant to admit that he knowingly shot deceased a second and third time. The record indicates that previous to and subsequent to the objection the defendant, without objection, was cross-examined regarding his statements to Officer Fesperman, thereby rendering harmless the specific question or answer exception No. 10 relates to.

**[7]** With respect to the specific questions and answers set forth above, we think the State derived no benefit, and defendant suffered no detriment, from them. Furthermore, we believe that any error indicated by exceptions 10 and 11 was cured by the instruction of the trial judge for the jury not to consider any of the examination relating to the paperwriting complained of. *State v. Atwood,* 250 N.C. 141, 108 S.E. 2d 219. The burden is on defendant not only to show error but also to show that the error complained of affected the result adversely to him. *State v. Garnett,* 4 N.C. App. 367, 167 S.E. 2d 63. Assignments of error Nos. 10 and 11 are overruled.

The remaining assignments of error brought forward and discussed in defendant's brief relate to the trial judge's charge to the jury. We have carefully reviewed the charge, particularly with reference to the portions and omissions complained of, but conclude that when the charge is considered contextually, it is free from prejudicial error.

No error.

VAUGHN, J., concurs; BROCK, J., dissents.

BROCK, J., dissenting:

I disagree with the holding of the majority with respect to defendant's assignments of error Nos. 10 and 11. If we are to follow the ruling of the Supreme Court of the United States in *Miranda v. Arizona,* 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694, it seems to me that the State cannot impeach the defendant by showing prior inconsistent statements on the question of guilt in a confession which has not been found to have been voluntarily given under the *Miranda* requirements. See: *Proctor v. U. S.,* 404 F. 2d 819 (App. D.C. 1968); *U. S. v. Fox,* 403 F. 2d 97 (2d Cir. 1968); *Groshart v. U. S.,* 392 F. 2d 172 (9th Cir. 1968); *Wheeler v. U. S.,* 382 F. 2d 998 (10th Cir. 1967); *U. S. v. Armetta,* 378 F. 2d 658 (2d Cir. 1967); *Commonwealth v. Robinson,* 428 Pa. 458, 239 A. 2d 308 (1968);

*Gœrtner v. State,* 35 Wis. 2d 159, 150 N.W. 2d 370 (1967); *People v. Luna,* 37 Ill. 2d 299, 226 N.E. 2d 586 (1967); *State v. Brewton,* 247 Or. 241, 422 P. 2d 581 (1967); *U. S. v. Lincoln,* 17 U.S.C.M.A. 330, 38 C.M.R. 128.

In this case the cross-examination by the solicitor from the in-custody pre-trial statement given by defendant to the investigating officer went to the very heart of defendant's defense that he acted in self-defense, or in the heat of passion suddenly aroused. If the State had an admissible confession from defendant, it had ample opportunity to establish it as such. If the confession was inadmissible for failure of the *Miranda* requirements, the procedure followed by the solicitor perverted the law.

It seems clear that the trial judge later realized the error because he thereafter undertook to withdraw the evidence from consideration by the jury. However, what is involved here is not judicial supervision of rules of evidence, but constitutional rights of a defendant. The particular right involved is defendant's Fifth Amendment right against self-incrimination as it has been declared in *Miranda.* In my opinion a violation of a constitutional right cannot be cured by an instruction to the jury to disregard evidence that constituted the violation.