The People of the State of Illinois, Plaintiff-Appellee, *v.* Klaus Wolfram, Defendant-Appellant.

(No. 57068;

First District (2nd Division)—May 29, 1973.

Robert S. Bailey and Arthur E. Engelland, both of Chicago, for appellant.

Edward V. Hanrahan, State's Attorney, of Chicago, for the People.

Mr. JUSTICE DOWNING delivered the opinion of the court:

Klaus Wolfram (defendant) was found guilty, after a jury trial, for the offense of burglary. He was sentenced to a term of 3 to 5 years in the Illinois State Penitentiary.

This appeal presents four issues: (1) was defendant's confession voluntary; (2) should a tire iron, seized as a derivative result of the confession, be suppressed; (3) can defendant's testimony at a hearing on a motion

to suppress a confession be used for impeachment of the defendant at the trial; and (4) does defendant have standing to object to a search of another's house.

On the morning of April 2, 1968, an Oak Park, Illinois pharmacist returned to his drug store, and, upon opening it for the day's business, found a door, two windows, and a window casing damaged, a number of drawers open, and a quantity of narcotics and money missing.

On April 4, 1968, a detective in the Forest Park police department received telephone information that narcotics were located in the home occupied by Gregory Glos. The Oak Park police department was also contacted. Thereupon, a detective from the Oak Park police department contacted the father of Gregory Glos and, with the consent of the father, they searched the father's home and seized a quantity of narcotics. While they were in the house, Gregory Glos returned and assisted the father and the detective in locating the narcotics.

Gregory Glos, on April 3, 1968, had purchased the narcotics at a suburban motel from the defendant and one Danny Demetri.

At about 4:30 P.M. on April 4, 1968, the defendant was arrested and taken to the Oak Park police station. On the arrival at the police station, defendant's eyes were dilated, his speech slurred and incoherent. He staggered when he attempted to walk. According to the police, the defendant appeared to be under the influence of "something," although no alcohol smell was detected. However, defendant was given his constitutional rights at that time. Between 4:30 P.M. and 12:15 to 12:30 A.M., defendant slept at the police station.

At 12:30 A.M. the following morning, defendant was questioned at the Oak Park police station. At that time he was again informed of his constitutional rights. Defendant acknowledged understanding his rights and declined an opportunity to use the telephone to call an attorney. Defendant, thereupon, confessed his participation in the drug store incident. In his confession he admitted that he and two other men had used a tire iron to gain entry to the pharmacy. Money and merchandise, including narcotics, were removed from the pharmacy. After giving an oral confession, the defendant refused to sign a written statement detailing the facts of the burglary. However, he accompanied the Oak Park police officers to his home, where he obtained car keys, proceeded to his backyard, opened the trunk of a car, and pulled out the tire iron. The defendant admitted using the tire iron at the burglary.

At the hearing on a motion to suppress his confession, defendant testified that he was in Forest Park on April 4, 1968 when he was apprehended by the police. He also testified that he had taken tuinols and seconals prior to the time he was apprehended. Defendant further testi-

fied that he had a complete loss of memory from approximately 4:30 P.M., April 4, 1968 to the next morning when he was taken to court.

At the trial, defendant testified that on April 4, 1968, he had taken three drugs: tuinols, seconals, and *morphine taken with a needle*. He also testified he did not recall being arrested. The trial court permitted impeachment of the defendant on the question of his adding *"morphine taken with a needle"* to the list of drugs testified to in the hearing on the motion to suppress.

Defendant contends his oral confession to the Oak Park police was involuntary. An evidentiary hearing on defendant's motion to suppress his confession was heard by the trial court out of the presence of the jury. Defendant makes no claim of police brutality. After listening to the testimony of defendant and the three police officers involved in questioning defendant, the trial court found that at 12:15 or 12:30 A.M., defendant was no longer under the influence of something, that he had been given his constitutional rights (as required in *Miranda v. Arizona,* 384 U.S. 436) and defendant understood them. The motion to suppress the confession was denied.

Defendant urges that nothing in the record supports a finding that his confession was the product of a rational intellect and a free will. His contention is based on the evidence which clearly established that at the time of defendant's arrest at 4:30 P.M. on April 4, his eyes were dilated, he was staggering, not coherent, and under the influence of something.

Defendant, on the motion to suppress, testified that prior to 4:30 P.M., he had taken 5 or 6 tuinols, a barbiturate drug and sleeping pill, and also took seconals, another barbiturate drug; that he did not remember anything thereafter until he had breakfast and coffee before going to court; [1] and that he did not remember talking to anybody at 12:30 A.M. on April 5.

Three police officers, who saw defendant at 4:30 P.M. and 12:30 A.M., testified. His condition at 4:30, as testified to by the officers, is summarized above. At 12:30 A.M., according to the officers he was normal, coherent, and walked under his own power.

On the question of voluntariness, defendant stresses *Townsend v. Sain* (1962), 372 U.S. 293; *In re Cameron* (1968), 68 Cal.2d 487, 439 P.2d 633, 67 Cal.Rptr. 529; and *People v. O'Leary* (1970), 45 Ill.2d 122.

In *Townsend,* a case involving a confession from a defendant under the influence of drugs, including a "truth serum" administered by a police physician, the Supreme Court at page 307 said:

---

[1] The record is not clear, but the court date was apparently during the morning of April 5, 1968.

"Numerous decisions of this Court have established the standards governing the admissibility of confessions into evidence. If an individual's 'will was overborne' [2] or if his confession was not 'the product of a rational intellect and a free will,' [3] his confession is inadmissible because coerced. These standards are applicable whether a confession is the product of physical intimidation or psychological pressure and, of course, are equally applicable to a drug-induced statement. It is difficult to imagine a situation in which a confession would be less the product of a free intellect, less voluntary, than when brought about by a drug having the effect of a 'truth serum.' [4] It is not significant that the drug may have been administered and the questions asked by persons unfamiliar with hyoscine's properties as a 'truth serum,' if these properties exist. Any questioning by police officers which *in fact* produces a confession which is not the product of a free intellect renders that confession inadmissible.[5]

In *Cameron*, the Supreme Court of California considered four confessions. One confession under the influence of alcohol (.18 alcohol blood level) was held voluntary. The other confessions were obtained after Cameron was injected (while under the influence of alcohol) with 300 mgs. of Thorazine; these confessions were rejected on the theory that Cameron's will was overborne because of impairment of his ability to exercise his rational intellect and free will.

In *O'Leary*, the police administered tear gas and placed O'Leary in a small cell. One-half hour later he was released from the cell and confessed. At page 125 the Illinois Supreme Court said:

"The question of the voluntariness of these statements and the admissibility of the pry bar is for the trial court to determine, and its determination depends not upon any one factor, but on the totality of all the relevant circumstances. *People v. Taylor*, 40 Ill. 2d 569, 573; *People v. Hudson*, 38 Ill.2d 616, 619."

The facts in each of the aforesaid cases are easily distinguished from the facts in this case. However, the legal principle common to each of these cases is significant.

■■ The trial judge saw all the witnesses. Applying the test of the totality of all the relevant facts, as testified to in the hearing on the motion to suppress, the trial judge concluded defendant's confession was voluntary. We find there is substantial evidence to support the trial

---

[2] *Reck v. Pate*, 367 U.S. 433, 440.

[3] *Blackburn v. Alabama*, 361 U.S. 199, 208.

(Footnotes 4 and 5 omitted.)

court's conclusion. The record is crystal clear that defendant's condition, on April 4 and 5, was not caused by any drugs administered by the police, rather it was self-inflicted. Likewise, the confession was not caused by any acts of coercion.

■■ Having so concluded, and based on the record in this case, defendant's claim that the tire iron, seized as a derivative result of defendant's confession, should have been excluded, is likewise denied.

During the course of the jury trial, defendant testified that he could not remember what occurred on April 4, 1968; that he took tuinols, seconals, both sleeping drugs, *and morphine;* that he did not remember talking to police officers on either April 4 or 5. On cross-examination, over objection of defendant, plaintiff was permitted to impeach defendant by using a portion of the defendant's testimony on the motion to suppress, as follows:

"Q: Mr. Wolfram, do you recall being asked this question and do you recall giving this answer. 'Calling your attention to the 4th day of April, 1968, were you apprehended? Yes sir.'

Do you recall being asked that question and do you recall giving that answer?

A: Yes, sir.

Q: Do you recall being asked this question. Do you recall giving this answer. 'Where was that at? Answer: Forest Park, sir.'

Do you recall being asked that question and do you recall giving that answer?

A: Yes.

Q: Do you recall being asked this question and do you recall giving this answer. 'Question: What had you taken prior to that time? Answer: Drugs. I was taking Tuinol which is a barbiturate drug. It is a sleeping pill. I take about four, five or six of those. I was taking Seconal which is another barbiturate drug. I was pretty well gone. I didn't remember nothing.'

Do you recall being asked that question and do you recall giving that answer?

A: Yes."

Defendant strongly urges this court to hold that the use of his testimony at a hearing on a motion to suppress his confession cannot be used to impeach his trial testimony. Defendant contends that to permit such a procedure will have a chilling effect on the rights of defendants under similar situations. Based on the facts in this case, we do not agree.

Defendant relies heavily on *Simmons v. United States* (1968), 390 U.S. 377. There the trial court denied defendant's motion to suppress

evidence, allegedly, illegally seized, and allowed the prosecution to use defendant's testimony at the hearing to suppress, for purposes of impeaching his testimony at trial on the issue of guilt. The Supreme Court held, that when a defendant testifies in support of a motion to suppress evidence on Fourth Amendment grounds, his testimony may not thereafter be admitted against him at trial on the issue of guilt unless he makes no objection. *Simmons* is distinguishable from the case at hand on two grounds. In *Simmons,* in a pretrial motion to suppress, the defendant, to maintain standing, was required to claim ownership of seized articles, while defendant Wolfram was burdened with no such standing requirement. Secondly, while the prosecution in *Simmons* used the testimony against the defendant on the issue of guilt, as part of its case in chief, in the instant case plaintiff did not use defendant's testimony to show guilt but rather for impeachment purposes.

In *People v. Luna* (1967), 37 Ill.2d 299, cited by defendant, the Illinois Supreme Court held it was error for the trial court to permit the prosecution to impeach a defendant's testimony, at a trial, by using his prior testimony in support of his motion to suppress, when that testimony was substantially the same as a suppressed confession. In the instant case the trial court did not suppress defendant's confession and the impeaching statements were not related to defendant's guilt.

In *Harris v. New York* (1971), 401 U.S. 222, the Supreme Court found no error where statements from a confession, inadmissible under *Miranda v. Arizona,* 384 U.S. 436, were used to impeach a defendant's testimony at trial. *Harris* did not claim the statements made to the police were coerced or involuntary. At pages 225 and 226 the court said:

> "Every criminal defendant is privileged to testify in his own defense, or to refuse to do so. But that privilege cannot be construed to include the right to commit perjury. See *United States v. Knox,* 396 U.S. 77 (1969); cf. *Dennis v. United States,* 384 U.S. 855 (1966). Having voluntarily taken the stand, petitioner was under an obligation to speak truthfully and accurately, and the prosecution here did no more than utilize the traditional truth-testing devices of the adversary process.[2] (Footnote omitted.)
>
>     \*    \*    \*
>
> The shield provided by *Miranda* cannot be perverted into a license to use perjury by way of a defense, free from the risk of confrontation with prior inconsistent utterances. We hold, therefore that petitioner's credibility was appropriately impeached by use of his earlier conflicting statements."

*People v. Moore* (1973), 54 Ill.2d 33, involved a defendant's oral

statement used on rebuttal for impeachment purposes. The trial court had denied defendant's motion to suppress the oral statement based on the alleged failure of properly advising the defendant of the *Miranda* warnings. The Illinois Supreme Court, based on the facts in the *Moore* case, applied the ruling of *Harris v. New York* (1971), 401 U.S. 222. Also see *People v. Byers* (1972), 50 Ill.2d 210, 212-213, and *People v. Speed* (1972) 52 Ill.2d 141, 145-146.

■■ The record shows defendant made no claim of police coercion. The trial court properly held the defendant's confession was voluntary. Under these circumstances, and in pursuit of the search for truth, the trial court did not err in permitting the impeachment.

■■ Lastly, defendant contends the trial court erred in admitting into evidence narcotic drugs, seized in the course of a search, which violated defendant's rights under the fourth and fourteenth amendments to the United States Constitution. The evidence established that the narcotics were obtained from the home of William Glos, and with his consent. Nothing was seized from the person or property of the defendant. As to these narcotic drugs, defendant has no standing to assert any violation of Fourth Amendment rights. See *Alderman v. United States* (1969), 394 U.S. 165.

For the reasons given, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

LEIGHTON and HAYES, JJ., concur.