THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* LONNIE E. STURGIS, Defendant-Appellant.

(No. 56288;

First District (5th Division)—August 3, 1973.

Gerald W. Getty, Public Defender, of Chicago, (Shelvin Singer and James J. Doherty, Assistant Public Defenders, of counsel,) for appellant.

Bernard Carey, State's Attorney, of Chicago, (Kenneth L. Gillis and Robert J. Cohen, Assistant State's Attorneys, of counsel,) for appellee.

Mr. PRESIDING JUSTICE DRUCKER delivered the opinion of the court:

On April 27, 1971, the defendant, Lonnie E. Sturgis, was found guilty, after a jury trial, of unlawful possession of narcotics (Ill. Rev. Stat. 1969, ch. 38, par. 22—3). He was sentenced to a term of five to ten years.

On appeal defendant contends that (1) the trial judge erred in allowing the prosecution to use for impeachment purposes certain statements sworn to and signed by defendant which were included in his motion to quash arrest and suppress evidence; (2) the State's evidence was not sufficient to prove him guilty beyond a reasonable doubt; and (3) the

case should be remanded for resentencing under the present Controlled Substances Act (Ill. Rev. Stat. 1971, ch. 56½, par. 1100 *et seq.*).

Acting on information from an informer, on July 9, 1970, officers Wayne King, Raymond Westbrook and James Arnold drove to the vicinity of Seeley and Madison Streets in search of the defendant, for whom they had an arrest warrant charging the sale of narcotics. Officers King and Arnold drove together, in an unmarked police auto, while officer Westbrook drove his own private vehicle. Officer King testified that upon arriving at Seeley and Madison, the informer came up to the car and had a conversation with him. The informer then left the police officers and returned a short time later. The informer was never searched. After a second conversation with the informer, officer Westbrook, who at the time was acting as an undercover agent, drove his car to the vicinity of 2114 West Madison Street and parked where he could see the defendant sitting on a step at that location.

Officer Westbrook testified that he saw the defendant pick up a red Winston cigarette package and remove tin foil from it and give it to an unknown man after receiving some money from him. After observing this, officer Westbrook signalled the two other police officers to move in.

Officer King testified that after he saw officer Westbrook give the signal to move in, he and officer Arnold drove to where Westbrook was parked. After Westbrook told them about the cigarette package containing the suspected heroin, he walked over and picked up the package, which was on the sidewalk about two feet away from the defendant, and then both officer Arnold and he arrested defendant. Officer King further testified that no other person was in the immediate vicinity of defendant. At the time of the arrest, officer Westbrook left the scene, still trying to preserve his undercover identity.

Sergeant Charles Vondrak, a police chemist, testified that on July 22, 1970, he analyzed the contents of three of the 26 packets of tin foil, randomly selected, which were found in the Winston cigarette package. His analysis revealed that all three of the packets contained heroin. He testified as to the specific weights of the three packages but no evidence was presented as to the total weight of all the heroin found in the cigarette package.

Defendant took the stand on his own behalf. He testified that on July 9, 1970, he was with seven or eight other fellows drinking beer in front of Jimmy's Tavern at 2117 West Madison when officers King and Arnold approached and asked for his identification. Defendant produced a driver's license, union card and social security card, all having the name of Lonnie Sturgis. The officers then took him back in the alley where they had their car parked and produced an arrest warrant. After defen-

dant was handcuffed and placed in the squad car, officer King went back to the tavern and then returned to the alley with a red cigarette package. Defendant testified that the officer's search of him revealed only a wallet with some identification and $6 in United States currency. He further admitted telling the police officers that he was attempting to purchase narcotics when apprehended and to being a narcotics addict for over seven months prior to the time he was apprehended.

Prior to trial defendant filed a written motion to "Quash and Suppress Physical Evidence" alleging an unlawful search and seizure and agreed that the evidence on the motion be heard along with the evidence at the time of trial. (This motion was denied by the court at the conclusion of the State's case.)

Defendant testified that he was arrested at 2117 West Madison and that police officers did not take any physical evidence from him. On cross-examination the prosecution was allowed to use the following statements contained in defendant's motion to quash arrest and suppress evidence to impeach the credibility of defendant's testimony:

> "1. On 9th of July, 1970, petitioner was arrested at or near 2114 W. Madison, Chicago, Ill.
>
> &ast;   &ast;   &ast;
>
> 8. During the arrest and subsequent detention, the police and prosecution became aware of the existence of physical evidence, witnesses, and other evidence all the direct and indirect fruits of the arrest and detention, which connect petitioner with a crime."

Defendant first contends that the use of these statements was error because it penalized defendant for seeking to enforce his Fourth Amendment rights. He relies on *Simmons v. U.S.*, 390 U.S. 377, 19 L.Ed.2d 1247, 88 S.Ct. 967 (1963), to support his contention.

In *Simmons* defendant made a motion to suppress physical evidence which was denied by the trial court. Defendant's testimony, relating to possession of this physical evidence which was given at the suppression hearing, was later introduced at trial. The court, noting the tension which was created between the Fourth and Fifth Amendments, by the introduction of this testimony, held:

> "&ast;   &ast;   &ast;  [W]hen a defendant testifies in support of a motion to suppress evidence on Fourth Amendment grounds, his testimony may not thereafter be admitted against him at trial *on the issue of guilt* unless he makes no objection." (Emphasis supplied.)

*Simmons* must be interpreted in the light of the U.S. Supreme Court decision in *Harris v. N.Y.*, 401 U.S. 222, 28 L.Ed.2d 1, 91 S.Ct. 643. There statements admittedly made in violation of *Miranda v. Arizona*, 384 U.S. 436, 16 L.Ed.2d 694, 86 S.Ct. 1602, (and therefore not admissible on the

issue of the defendant's guilt of the crime charged) were used on cross-examination to impeach the credibility of the defendant. The use of the statements was expressly limited to impeachment purposes only. The court held that "petitioner's credibility was appropriately impeached by use of his earlier conflicting statements." In supporting this decision the court noted at page 225:

"Every criminal defendant is privileged to testify in his own defense, or to refuse to do so. But that privilege cannot be construed to include the right to commit perjury. [Cases cited.] Having voluntarily taken the stand, petitioner was under an obligation to speak truthfully and accurately, and the prosecution here did no more than utilize the traditional truth-testing devices of the adversary process."

The State contends, and we think with merit, that the prosecution's actions fall within those permitted by *Harris*. Defendant in his direct examination testified to certain facts, and the prosecution then attempted to impeach defendant's credibility by showing prior inconsistent statements made in defendant's motion. The court specifically limited the use of this evidence to impeachment purposes, whereas it must be remembered that in *Simmons* the testimony was introduced on the issue of guilt.

The State did not need nor use this evidence to prove its case in chief. Defendant has not contended that these statements were other than voluntary and trustworthy. It makes no difference that in *Harris* a *Miranda* violation was involved, while in the case at bar a Fourth Amendment violation was originally alleged. *Harris* has not been limited to *Miranda* violations. See *U.S. ex rel. Wright v. La Vallee*, 471 F.2d 123, 127; *U.S. ex rel Walker v. Follette*, 443 F.2d 167.

Defendant also has cited *People v. Luna*, 37 Ill.2d 299, 226 N.E.2d 299, 226 N.E.2d 586.. *Luna* presented a similar situation to the present case with the major exception that the circuit court there granted a motion to suppress the confession and the testimony introduced was almost identical to the confession. So too it must be noted that *Luna* was decided before *Harris* and therefore is limited by *Harris*.

■■ We find that it was proper for the State to use these statements on cross-examination in seeking to impeach defendant's credibility.

Defendant next contends that he was not proved guilty beyond a reasonable doubt. While not denying that the cigarette package containing heroin was found within two feet of the defendant, he proposes several theories as to how the heroin came to be at this location. Defendant's major thesis is that the use of the informer who was not searched creates a reasonable doubt of defendant's guilt. The cases cited by defendant as

to the credibility of the informer are inapposite. The informer was not called to the stand and did not testify. His credibility was never put in issue and his participation was not necessary to the State's case in chief.

In proposing his theories as to how the cigarette package was within two feet of himself, defendant overlooks the direct testimony of officer Westbrook who said he saw defendant make a sale from this cigarette package. His testimony was not impaired by his failure to make an arrest of the unknown buyer for he stated that since he was working in the capacity of an undercover agent, he wasn't supposed to arrest anyone.

Finally, defendant attacks the credibility of officer Westbrooks testimony by noting the lack of any money listed on the inventory report despite the fact that officer Westbrook witnessed a sale. Again defendant overlooks the testimony of officer Westbrook that only the heroin was inventoried.

■■ It has consistently been held that it is the function of the trier of the facts to determine the credibility of the witnesses, and its finding of guilty will be disturbed only where the evidence is so unsatisfactory as to leave a reasonable doubt as to the defendant's guilt. (*People v. Hampton*, 44 Ill.2d 41, 45, 253 N.E.2d 385.) The record adequately supports defendant's possession of heroin, and we will not disturb the court's findings by substituting various hypotheses of defendant.

■■ Defendant contends that aside from the issue of guilt, he is entitled to resentencing under the present Illinois Controlled Substances Act. (Ill. Rev. Stat. 1971, ch. 56½, par. 1100, *et seq.*) Defendant was convicted on April 27, 1971, and sentenced to not less than five years nor more than ten years. He was convicted and sentenced under the then existing provision of the Criminal Code. (Ill. Rev. Stat. 1969, ch. 38, par. 22—1, *et seq.*) On August 16, 1971, the present Illinois Controlled Substances Act became effective. Section 1601 of this Act provides as follows:

> "Prosecution for any violation of law occurring prior to the effective date of this Act is not affected or abated by this Act. If the offense being prosecuted would be a violation of this Act, and has not reached the sentencing stage or final adjudication, then for purposes of penalty the penalties under this Act apply if they are less than under the prior law upon which the prosecution was commenced."

Since this case is pending on direct appeal, it has not reached "final adjudication" as specified in section 1601. (*People v. Chupich*, 53 Ill.2d 572, 295 N.E.2d 1; *People v. Bailey*, 1 Ill.App.3d 161, 273 N.E.2d 74; *People v. McCloskey*, 2 Ill.App.3d 892, 274 N.E.2d 358.) The sentencing structure under the Illinois Controlled Substances Act depends on a find-

ing of the quantity of heroin found to be in defendant's possession. There was no finding in the trial court as to total quantity. Hence, while we affirm the judgment of conviction, we set aside the sentence and remand for a determination quantity and resentencing under the Controlled Substances Act and the Unified Code of Corrections. Ill. Rev. Stat. 1973, ch. 38, pars. 1001—1—1, *et seq. People v. Chupich, supra.*

Judgment affirmed; sentence set aside and cause remanded with directions.

ENGLISH and SULLIVAN, JJ., concur.