(No. 46184.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. LONNIE E. STURGIS, Appellant.

*Opinion filed September 27, 1974.*

GOLDENHERSH, J., dissenting.

James J. Doherty, Public Defender, of Chicago (Shelvin Singer and Justin Knipper, Assistant Public Defender, of counsel), for appellant.

William J. Scott, Attorney General, of Springfield, and Bernard Carey, State's Attorney, of Chicago (James B. Zagel, Assistant Attorney General, and Patrick T. Driscoll, Jr., and Mary Ellen Dienes, Assistant State's Attorneys, of counsel), for the People.

MR. JUSTICE KLUCZYNSKI delivered the opinion of the court:

Defendant, in a jury trial held in the circuit court of Cook County, was convicted of unlawful possession of narcotics. The appellate court affirmed the conviction and remanded to determine the proper sentence. (*People v. Sturgis,* 14 Ill. App. 3d 181.) We granted leave to appeal. The sole issue before us is whether reversible error occurred when the trial court allowed the State to use for impeachment purposes certain statements sworn to and signed by the defendant which were included in a "Motion to Quash Arrest and Suppress Evidence." The facts are fully set out in the appellate court opinion and we recite only such matters as we deem necessary to determine the issue before us.

On Friday, April 23, 1971, appointed defense counsel filed the motion which bore defendant's signature and that date. The motion in relevant part is set forth as follows:

"PEOPLE OF THE STATE OF ILLINOIS)
                           )
       -vs-          ) Indictment No. *70-2545*
                           )
*LONNIE STURGIS*        )

MOTION TO QUASH ARREST AND SUPPRESS EVIDENCE

Petitioner, *LONNIE STURGIS* , the defendant in the above-entitled cause, moves this Honorable Court to quash his arrest and suppress from introduction into evidence the direct and indirect products of said arrest.

In support whereof, petitioner states:

1. On  *9th of July, 1970*  , petitioner was arrested at or near *2114 W. Madison, Chicago, Ill.*

\* \* \*

8. During the arrest and subsequent detention, the police and prosecution became aware of the existence of physical evidence, witnesses, and other evidence all the direct and indirect fruits of the arrest and detention, which connect petitioner with a crime."

The substance of the motion was in typewritten form except for the italicized portions which were handwritten. It was stipulated and agreed that the evidence that was to be heard during the course of the trial would be considered as evidence presented on behalf of the defendant on this motion which was thereafter denied at trial. A jury was selected that day and the cause continued until Monday, April 26, when trial commenced.

The facts presented by the State established that an undercover police officer while observing defendant sitting in a doorway area at 2114 W. Madison in Chicago saw him pick up a cigarette package, remove tinfoil from it and give it to an unknown party after an exchange of money. The officer then gave a prearranged signal to two other police officers. They approached and placed defendant in custody pursuant to an arrest warrant for a previous narcotics charge and found the cigarette package near his feet. It contained 26 tinfoil packets. Three were randomly selected, tested and found to contain heroin.

Defendant testified that he was a drug addict looking for a "fix" and that he was with several men in a tavern doorway at 2117 W. Madison when the police approached. He said that after his arrest he was placed in a squad car. At this time one of the officers returned from the lot near the tavern, displayed a cigarette package to defendant and then inquired if the package belonged to him.

On cross-examination, over defense objection, the State put questions to defendant about certain matters contained in the motion. The trial court permitted this and admitted the motion into evidence for purposes of impeachment, but the jury was not allowed to take the exhibit to the jury room during subsequent deliberations.

The State asked defendant if the police had taken any physical evidence from him and defendant denied that they had. It then challenged the credibility of this testimony by noting the variance of the addresses where the arrest was said to have been made and the allegation contained in paragraph 8 of the motion pertaining to the seizure of physical evidence. On redirect examination defendant testified that he did not know the contents of the motion but that he signed it as counsel had instructed him to do.

Relying principally on *Simmons v. United States* (1968), 390 U.S. 377, 19 L. Ed. 2d 1247, 88 S. Ct. 967, *Brown v. United States* (1973), 411 U.S. 223, 36 L. Ed. 2d 208, 93 S. Ct. 1565, and *People v. Luna* (1967), 37 Ill.2d 299, defendant argues that it was reversible error to permit the utilization of the suppression motion for impeachment purposes at trial. He contends that an accused in many instances must allege in the motion to suppress either possession of the item seized or the premises which were searched in order to establish standing to raise the issue as to the propriety of the search and seizure conducted by the police. (*People v. McNeil* (1972), 53 Ill.2d 187.) He argues that, if an accused elects to proceed with the motion, he may later be impeached at trial by matters raised at the suppression hearing if he denies implication in the offense. He claims that "tension" is created between exercise of rights granted by the fourth and fifth amendments. Defendant therefore generally argues that a damaging admission necessary to raise a fourth amendment claim may not be used against him at the subsequent trial.

Citing *Harris v. New York* (1971), 401 U.S. 222, 28 L. Ed. 2d 1, 91 S. Ct. 643, the State argues that a defendant's credibility may be challenged by pretrial statements in support of his motion to suppress where there is no coercion demonstrated in obtaining these statements. The State maintains that a defendant in a criminal case should not be permitted to perjure himself in order to be

acquitted. (*Commonwealth v. Ravenell* (1972), 448 Pa. 162, 173-174, 292 A.2d 365, 371.) Finally, the State has contended, in oral argument before us, that under the applicable law in this case it was unnecessary to establish a possessory interest in the narcotics in order to question the validity of the search. (*Jones v. United States* (1960), 362 U.S. 257, 4 L. Ed. 2d 697, 80 S. Ct. 725.) Thus the State concludes that defendant cannot now complain that he was prejudiced by possible incriminating statements which he voluntarily made relating to possession of any items.

We must reject defendant's position concerning the applicability of the decisions of the United States Supreme Court in *Simmons* and *Brown* to this appeal. In *Simmons* that court held "that when a defendant testifies in support of a motion to suppress evidence on Fourth Amendment grounds, his testimony may not thereafter be admitted against him at trial *on the issue of guilt* unless he makes no objection." (Emphasis added.) (390 U.S. at 394, 19 L. Ed. 2d at 1259.) In *Brown* the court interpreted *Simmons* to prohibit the *direct* admission at trial of an accused's testimony given during a suppression hearing in order to establish the requisite standing to seek the exclusion of certain evidence on the basis of a fourth amendment violation. 411 U.S. at 228, 36 L. Ed. 2d at 213.

We believe that *Simmons* and *Brown* must be construed in harmony with *Harris v. New York* (1971), 401 U.S. 222, 28 L. Ed. 2d 1, 91 S. Ct. 643, where the United States Supreme Court held that a defendant might be impeached at trial by introduction of his prior statements rendered otherwise inadmissible under *Miranda v. Arizona* (1966), 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602. The court in *Harris* relied upon *Walder v. United States* (1954), 347 U.S. 62, 65, 98 L. Ed. 503, 507, 74 S. Ct. 354, wherein it was stated:

> "It is one thing to say that the Government cannot make an affirmative use of evidence unlawfully obtained. It is quite another to say

that the defendant can turn the illegal method by which evidence in the Government's possession was obtained to his own advantage, and provide himself with a shield against contradiction of his untruths. Such an extension of the *Weeks* doctrine would be a perversion of the Fourth Amendment.

\*\*\* [T]here is hardly justification for letting the defendant affirmatively resort to perjurious testimony in reliance on the Government's disability to challenge his credibility."

Thus in *Harris* the court concluded that "[e]very criminal defendant is privileged to testify in his own defense, or to refuse to do so. But that privilege cannot be construed to include the right to commit perjury. [Citations.] Having voluntarily taken the stand, petitioner was under an obligation to speak truthfully and accurately, and the prosecution here did no more than utilize the traditional truth-testing devices of the adversary process." 401 U.S. at 225, 28 L. Ed. 2d at 4; *cf. United States v. Kahan* (1974), 415 U.S. 239, 39 L. Ed. 2d 297, 94 S. Ct. 1179.

We therefore hold that the testimony of a defendant or documents voluntarily attested to by him in conjunction with his motion to suppress evidence may not be introduced by the State directly in its case in chief but may be used for purposes of impeachment should the defendant choose to testify at trial. To the extent that our present holding conflicts with *People v. Luna* (1967), 37 Ill.2d 299, which was decided prior to *Harris v. New York,* that decision is overruled. In the present case the introduction of matters contained in the suppression motion for impeachment purposes was not error.

Accordingly the judgment of the appellate court is affirmed.

*Judgment affirmed.*

MR. JUSTICE GOLDENHERSH, dissenting:

I dissent. The record in this case shows that for two obvious reasons the statements contained in the motion to suppress were not admissible for purposes of impeachment. The questions and answers which purportedly rendered them admissible were:

"Q. Your lawyer asked you if the police officers took anything from you and you said yes, your wallet, is that right?

A. Yes, they did.

Q. All right, how, is there anything that they took away from you that they didn't give back to you?

A. No, sir."

First, it is axiomatic that in order to be admissible for purposes of impeachment the prior statement must be inconsistent with the testimony and, clearly, the statements contained in the motion are not inconsistent with the defendant's answer. Secondly, the testimony shows beyond a doubt that the motion was prepared by defendant's appointed counsel, on a printed form, and defendant had not the vaguest understanding of what it contained or what it purported to show.

This case could and should have been decided on the ground that the use of the motion for purposes of impeachment was error, but on this record, harmless. In order to sustain this conviction it was not necessary to reach the constitutional questions, and it is unfortunate that the majority has used this case to overrule our earlier decision in *People v. Luna,* 37 Ill.2d 299, and to do violence to established constitutional principles.

I have previously pointed out that I believe *Harris v. New York,* 401 U.S. 222, 28 L. Ed. 2d 1, 91 S. Ct. 643, to have been wrongly decided (see dissenting opinion, *People v. Moore,* 54 Ill.2d 33, at 38), and I find nothing in the majority opinion in that case or in any later opinion of the Supreme Court which meets the arguments advanced in Mr. Justice Brennan's eloquent dissent in *Harris.* 401 U.S. at 226, 28 L. Ed. 2d at 5.

The majority, to justify its conclusion, states: "We

believe that *Simmons* and *Brown* must be construed in harmony with *Harris v. New York* (1971), 401 U.S. 222, 28 L. Ed. 2d 1, 91 S. Ct. 643, where the United States Supreme Court held that a defendant might be impeached at trial by introduction of his prior statements rendered otherwise inadmissible under *Miranda v. Arizona* (1966), 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602." I fail to see why the majority of this court should assume the burden of construing *Simmons* and *Brown* in harmony with *Harris* in view of the fact that in *Brown,* decided two years after *Harris,* the Supreme Court did not attempt so to do. *Brown* does not mention *Harris* and, contrary to the majority's interpretation of *Brown,* the opinion states that the decision in *Simmons* "has removed the danger of coerced self-incrimination." *Brown v. United States,* 411 U.S. 223, 229, 36 L. Ed. 2d 208, 214, 93 S. Ct. 1565, 1569.

In *Simmons,* the late Mr. Justice Harlan, writing for the majority, said: "The rule adopted by the courts below does not merely impose upon a defendant a condition which may deter him from asserting a Fourth Amendment objection—it imposes a condition of a kind to which this Court has always been peculiarly sensitive. For a defendant who wishes to establish standing must do so at the risk that the words which he utters may later be used to incriminate him. Those courts which have allowed the admission of testimony given to establish standing have reasoned that there is no violation of the Fifth Amendment's Self-Incrimination Clause because the testimony was voluntary. As an abstract matter, this may well be true. A defendant is 'compelled' to testify in support of a motion to suppress only in the sense that if he refrains from testifying he will have to forgo a benefit, and testimony is not always involuntary as a matter of law simply because it is given to obtain a benefit. However, the assumption which underlies this reasoning is that the defendant has a choice: he may refuse to testify and give

up the benefit. When this assumption is applied to a situation in which the 'benefit' to be gained is that afforded by another provision of the Bill of Rights, an undeniable tension is created. Thus, in this case Garrett was obliged either to give up what he believed, with advice of counsel, to be a valid Fourth Amendment claim or, in legal effect, to waive his Fifth Amendment privilege against self-incrimination. In these circumstances, we find it intolerable that one constitutional right should have to be surrendered in order to assert another. We therefore hold that when a defendant testifies in support of a motion to suppress evidence on Fourth Amendment grounds, his testimony may not thereafter be admitted against him at trial on the issue of guilt unless he makes no objection." 390 U.S. 377, 393, 19 L. Ed. 2d 1247, 1258, 88 S. Ct. 967, 976.

To me, the clear intent of *Simmons* is that statements made or testimony given in a proceeding to enforce a Fourth Amendment right may not be used in the trial of a defendant who subsequently exercises his constitutional right to testify, either in the prosecution's case in chief or for purposes of impeachment.

In *People v. Luna,* 37 Ill.2d 299, in holding that the defendant's testimony in support of his motion to suppress a confession could not be used to impeach him at trial this court said: "In order to avail himself of his constitutional rights under our procedure, defendant was compelled to move to suppress the confession. It also appears from the record that his testimony was essential on this motion. Defendant was therefore placed in the dilemma of either foregoing his constitutional right to a suppression of an unlawful confession, or of running the risk of his testimony being used against him at the trial. We think it is no answer to say that defendant need not have taken the stand at his trial. One ought not be forced to choose between availing himself of two equally valuable rights. *** We believe that the ruling of the trial court in

permitting the use of defendant's testimony in this case substantially dilutes the fundamental guaranties of both the Federal and Illinois constitutions, and constitutes reversible error." 37 Ill.2d 299, at 308.

*Luna* was decided prior to both *Simmons* and *Harris,* and I find nothing in either of those opinions which justifies its being overruled. Assuming, *arguendo,* that *Harris* permits the result reached here, this court is free to impose higher standards for the protection of constitutional rights than those set by the Supreme Court. (*Cooper v. California,* 386 U.S. 58, 17 L. Ed. 2d 730, 87 S. Ct. 788.) This court has employed *Harris* as a vehicle to follow the Supreme Court into regression (see *People v. Moore,* 54 Ill.2d 33), but we need not, as we do here, use it as the means to serve as its vanguard.