Kent A. HALVERSON, Petitioner and Appellant,

v.

STATE of South Dakota, Appellee.

No. 14549.

Supreme Court of South Dakota.

Considered on Briefs Nov. 26, 1984.

Decided Aug. 6, 1985.

Kevin E. Looby, Minnehaha County Public Defender, Sioux Falls, for petitioner and appellant.

Clair B. Ledbetter, Asst. Atty. Gen., Pierre, for appellee; Mark V. Meierhenry, Atty. Gen., Pierre, on brief.

RAMYNKE, Circuit Judge.

Kent Halverson was arrested on September 19, 1981, and arraigned on a charge of third-degree burglary on November 13, 1981. He entered a plea of not guilty. On

February 23, 1982, he withdrew his plea of not guilty and, pursuant to a plea bargain, entered a plea of guilty. He was sentenced to a term of seven years to run concurrently with a sentence imposed in Davison County on an unrelated charge.

■ Halverson instituted this post-conviction proceeding on the grounds that the terms of the plea bargain were not followed and that the court failed to establish a factual basis for the plea of guilty. Halverson claims that by the terms of the plea bargain explained to him by his attorney the state would not file a habitual criminal charge,* an unrelated pending forgery case would be dismissed, any sentence he would receive would run concurrently to his sentence on another charge in Davison County, and the maximum sentence he could receive would be ten years. He also claims that the state's attorney would make no recommendation at the sentencing hearing and that the sentence imposed would be a maximum of two years. The trial court found that these last two items were not a part of the plea bargain.

During the change of plea hearing on February 23, 1982, the court asked for a statement of the plea bargain. It was given as follows:

Mr. Trotzig, (Deputy State's Attorney): The plea bargain is that a pending forgery case against Mr. Halverson in this court will be dismissed; that there has not been and will not be a habitual information filed in this case; that the maximum sentence ... [a]nd the maximum sentence that could be imposed in this case would be ten years. The habitual criminal charge will not be filed. There will be no filing of the forgery charge. That will be dismissed. Also, Your Honor, any time that Mr. Halverson receives will run concurrent to the sentence that he receives in Mitchell, South Dakota on

---

* Although the habitual criminal charge must be filed prior to arraignment on the main charge, it is always possible for the state to dismiss the charge before jeopardy has attached, then file

the habitual criminal charge and refile the original charge. *State v. Garritsen,* 302 N.W.2d 409 (S.D.1981); *State v. Alexander,* 313 N.W.2d 33 (S.D.1981).

March 23, 1982 which is on an unrelated felony matter.

Later, the court asked:

The Court: Apparently at the time of sentencing counsel will give recommendations or oral arguments as to the amount of sentencing; is that correct?

Mr. Trotzig: Yes, Your Honor.

Mr. Trygstad, (Halverson's Attorney): That's correct, Your Honor.

Finally, the court questioned:

The Court: Well, then the question will be how long the sentence will be up to a maximum of ten years with counsel at the time of sentencing to make their argument and recommendations as to sentencing?

Mr. Trotzig: Yes.

Mr. Trygstad: Yes.

The Court: Do you have any questions on the plea bargain, sir?

The Defendant: No, Your Honor.

On March 30, 1982, Halverson executed a document entitled "Petition to Enter a Plea of Guilty." In that document he answered yes to the question of whether there had been a plea bargain. As to his understanding of the agreement Halverson wrote: "Will not file habitual. Would drop all charges. Would run concurrent with Mitchell." His reason for making the plea agreement was "Fair as could be expected." In response to other questions, Halverson answered that the maximum punishment for the offense he wanted to plead guilty to was ten years; that the sentence he would receive was solely a matter for the judge to decide; and, that the judge had not made any suggestion as to what the actual sentence would be.

Halverson's signature on the "Petition to Enter a Plea of Guilty" is followed by a "Certificate of Counsel." There, his attorney, David Trygstad, certified that he had explained all of Halverson's rights to him; that to the best of his knowledge Halverson's statements made in the petition were true; that Halverson's actions were consistent with counsel's advice; and that the plea was voluntarily and understandingly made.

■ Halverson had every opportunity to tell the court that there was an agreement in the plea bargain that the state's attorney would remain silent at the sentencing and that he was to receive a sentence of two years. He did not mention these when the plea bargain was discussed in court or in making out his "Petition to Enter a Plea of Guilty." He did not object when the deputy state's attorney argued for a longer sentence or when the judge imposed a sentence of seven years. Halverson is a man with several years of college and numerous courtroom experiences. There is no reason to believe he was not competent to understand what was going on.

Halverson next argues that there was no factual basis for the plea of guilty.

■ In the "Petition to Enter a Plea of Guilty" Halverson wrote "I did enter the building but didn't take anything." At the change of plea hearing, the court asked: "Are you admitting that you entered this structure known as Hub Motors on South Cliff Avenue with the intent to commit a crime therein?" Halverson answered: "Yes, Your Honor."

At the sentencing hearing the following took place:

The Court: Mr. Froehlich, what does the State allege specifically that the defendant did in this case?

Mr. Froehlich: I have copies of the arrest report and the case report if the Court would like to see them. Specifically, we are alleging that the defendant broke into Hub Motors located at 917 South Cliff Avenue. It is a third degree burglary charge.

The Court: Where was he apprehended?

Mr. Froehlich: He was apprehended at the scene coming out of the building by police officers who had been called by a neighbor to investigate a prowler.

The Court: Mr. Halverson, am I correct in understanding that that is substantially the factual situation here?

The Defendant: Yes, it is.

The Court: That you were apprehended in this building on South Cliff Avenue?

The Defendant: Yes, Your Honor.

The Court: Do you have any questions on this statement that you have signed today?

The Defendant: No.

The Court: Am I to understand that the answers to the questions are true and correct to the best of your knowledge and belief?

The Defendant: Yes.

At this point in the hearing the court found that there was a factual basis for the plea. The trial court in the post-conviction hearing found that a factual basis had been established before acceptance of Halverson's plea of guilty. We agree.

Halverson alleges he had ineffective assistance of counsel in the handling of the plea bargain. Specifically, he charges that at the sentencing hearing his attorney should not have agreed that Halverson could be sentenced to anything up to ten years and that the amount of sentence to be imposed could be argued by both sides. His attorney admitted at the post-conviction hearing that he had agreed to these terms at the sentencing hearing because he was asleep or not listening to what was being said.

The guidelines for determining ineffective assistance of counsel are:

(a) Any claim to deprivation of effective assistance of counsel must be judged by whether counsel's conduct so undermined the functioning of the adversarial process that the trial cannot be relied on to have produced a just result, and

(b) A convicted defendant must show that counsel's performance was deficient, and must show a reasonable probability that but for such deficiency, the trial would have been different.

*Strickland v. Washington,* —— U.S. ——, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *Application of Roberts,* 86 S.D. 672, 200 N.W.2d 625 (1972); *State v. Van Egdom,* 292 N.W.2d 586 (S.D.1980).

■ Halverson's allegations as to ineffective counsel fail. He has not shown by a preponderance of the evidence that a different result would have occurred if his attorney had been awake at the arraignment and objected when the state's attorney made a plea for a longer sentence. Given the fact of Halverson's previous record of criminal convictions, together with the facts of the plea bargain, there has been no showing that the court would not have invoked a seven-year sentence had the state's attorney made no recommendation. The court determines sentence based on all the facts. There was nothing said by the state's attorney that was not already known by the court when sentence was pronounced.

Regardless of any advice Halverson received from his attorney, the court did fully advise him of all his constitutional rights, the terms of the plea bargain as it had been presented to the court, and the possible consequences of his entering a plea of guilty. He was queried as to his understanding of these rights and the plea bargain. The record clearly shows that Halverson feared a successful prosecution if the case were to be tried. That was the basis on which he entered his plea.

The order denying Halverson's petition for post-conviction relief is affirmed.

FOSHEIM, C.J., and WOLLMAN and MORGAN, JJ., concur.

HENDERSON, J., concurring specially.

RAMYNKE, Circuit Judge, sitting for WUEST, Acting Justice, disqualified.

HENDERSON, Justice (specially concurring).

I do not wish to be obdurate to such an innocent pleasure as sleep, but I stoutly maintain it should be confined to the bedroom and not the courtroom when an attorney is charged with protecting the constitutional rights of his client. It is written: "Sleep, the brother of death." [Hesiod:

Theogony (8th Century B.C.)]. William Shakespeare, in Macbeth II. iii, described it as "downy sleep, death's counterfeit." So sleep has been characterized as akin to death, at least temporary death, for centuries. It is another world. And it doesn't belong in the courtroom.

Counsel involved in these plea bargain proceedings in 1982 claims, under oath, at a post-conviction hearing in August 1983, that he must have fallen asleep during the proceedings and that he just let the statement of the plea bargain go in, that he should not have and this was pretty sloppy attorney work on his part. Were I to disregard the findings of the trial court and leap on his words as a verity, I would have little trouble in arriving at a conclusion that Halverson had ineffective assistance of counsel. At this tender moment during a criminal proceeding (plea bargain proceedings), an attorney who is asleep in the courtroom could not possibly render effective assistance of counsel. Thus, should any case be reviewed by this author wherein such a fact is patently clear, I would not hesitate for a moment to reverse the conviction. Reference is made hereby to my special writing in *State v. Tiger*, 365 N.W.2d 855, 858 (S.D.1985), wherein I applied the facts of that case to *Strickland*, which is now cited in the majority opinion. It is not professional competency to be asleep during expressions of a plea bargain on the record. This would not be "the customary skills and diligence that a reasonably competent attorney would perform under similar circumstances." *High Elk v. State*, 344 N.W.2d 497, 500 (S.D.1984) (quoting *United States v. Easter*, 539 F.2d 663, 666 (8th Cir.1976)).

The author of the majority opinion has carefully set forth the various colloquies which are pertinent to not only Attorney Trygstad's understanding of the plea bargain but also that of Halverson, the defendant.

Well it might be that defense counsel Trygstad testified in a post-conviction hearing that he must have fallen asleep and that he just let the statement of the plea bargain go in; however, the record, at the time of spreading the plea bargain upon it, rebuts Attorney Trygstad's statements at the post-conviction hearing. When the trial judge made the statement, in open court, in the form of a question, that the sentence "will be up to a maximum of ten years with counsel at the time of sentencing to make their argument and recommendations as to sentencing," Attorney Trygstad clearly answered "yes." He was not asleep then. His testimony at the post-conviction hearing is confounding. Therefore, under the state of the record, the "sleep/ineffective assistance of counsel" defense, advocated by appellate counsel, is not supported in fact. Defense counsel's statements at the post-conviction relief hearing are highly questionable.

Findings of Fact and Conclusions of Law denying post-conviction relief were entered on February 3, 1984. As we have held in the past, the burden of establishing a base for post-conviction relief rests upon the Petitioner. This case was grounded on the preexisting post-conviction provisions of SDCL ch. 23A–34. The scope of review of that now-extinct chapter is this:

> Our standard of review in post-conviction proceedings is to hold that the findings of fact, conclusions of law, and order of the court hearing the petition *are dispositive unless clearly erroneous.* (Emphasis supplied.)

*Honomichl v. State*, 333 N.W.2d 797, 799 (S.D.1983). Halverson, even with the asleep-at-the-switch defense, has failed to meet his burden of proof in establishing that the Findings of Fact and Conclusions of Law are clearly erroneous. Therefore, I concur in the majority opinion.