George G. LUNA, Applicant
and Appellant,

v.

Herman SOLEM, Warden of the South
Dakota Penitentiary, Respondent
and Appellee.

No. 15475–a–RAM.

Supreme Court of South Dakota.

Argued Feb. 17, 1987.

Decided Aug. 19, 1987.

Mitchell D. Johnson, Rapid City, for applicant and appellant.

John P. Guhin, Asst. Atty. Gen., Pierre, for respondent and appellee; Mark V. Meierhenry, Atty. Gen., Pierre, on brief.

MILLER, Justice.

George G. Luna (Luna) appeals the lower court's dismissal of his petition for habeas corpus relief. We affirm.

On June 1, 1984, a jury convicted Luna of two counts of first-degree murder for the slaying of his wife and mother-in-law. He was sentenced to life imprisonment. Luna was represented in his criminal trial by Ramon Roubideaux (Roubideaux), who at Luna's request assumed the case from court-appointed counsel. Roubideaux was Luna's primary counsel during the criminal trial, but was assisted on the case by another lawyer. We affirmed Luna's conviction upon direct appeal in *State v. Luna*, 378 N.W.2d 229 (S.D.1985) (*Luna I*). Luna applied for habeas corpus relief roughly two years after his conviction. Additional facts will be set out where pertinent.

## ISSUES [1]

Luna contends he was denied his Sixth Amendment right to effective assistance of counsel by Roubideaux's failure to (1) pursue a motion to suppress evidence on the ground the evidence was discovered as the result of an invalid consent to search; (2) move to suppress glass fragment evidence on the grounds the State lost some of the glass particles; and (3) object to allegedly improper closing remarks by the prosecutor. Luna's fourth argument is that the prosecutor's statement denied him his due process rights to a fair trial.

## INEFFECTIVE ASSISTANCE OF COUNSEL CLAIMS

■ We first examine Luna's ineffective assistance of counsel claims. As we re-

---

1. So that the reader is not confused by the dissent, the sole issue in this habeas corpus action centers around a claimed ineffective assistance of counsel NOT law enforcement or prosecutorial misconduct. Those issues were addressed and rejected in *Luna I.* Additionally, there is absolutely no reference in this record to the denial of a defense centering around some bloody confessor. That issue was specifically rejected on direct appeal in the well-reasoned and articulated opinion authored by Justice Morgan. *Luna I,* page 231 et seq. Will we never let sleeping dogs lie?

cently explained in *Lee v. Solem*, 405 N.W.2d 56 (S.D.1987), when reviewing ineffective assistance challenges "this court has applied both the more stringent standard of South Dakota and the less stringent standard presented in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)." 405 N.W.2d at 57. *See also Woods v. Solem*, 405 N.W.2d 59 (S.D.1987). The South Dakota standard was adopted prior to the United States Supreme Court's landmark *Strickland* decision,[2] and our post-*Strickland* citations of the South Dakota rule reflect a carryover of that rule. Since a petitioner has a federal constitutional right to bring an ineffective assistance claim under the *Strickland* standards, we now make it clear that the higher South Dakota standards have been laid to rest, and the *Strickland* test is controlling.

██ Under *Strickland*, to succeed on an ineffective assistance of counsel claim, the defendant must show two requirements.

> 'First, ... that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, ... that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'

*Woods*, 405 N.W.2d at 61 (quoting *Strickland*). Prejudice exists when " '... there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.' " *Woods*, 405 N.W.2d at 61 (quoting *Strickland*). *See also Lee, supra; Halverson v. State*, 372 N.W.2d 463 (S.D. 1985). The burden of proving prejudice

rests upon the defendant. *Woods, supra* (citing *Strickland*); *Lee, supra; Halverson, supra*. Additionally, "[t]here is a strong presumption that counsel's performance falls within the 'wide range of professional assistance' " and " '[t]he reasonableness of counsel's performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances and the standard of review is highly deferential.' " *Kimmelman v. Morrison*, 477 U.S. 365, ——, 106 S.Ct. 2574, 2586–87, 91 L.Ed.2d 305, 323 (1986) (quoting *Strickland*).

██ It is true that we held the habeas corpus petitioner in *Loop v. Solem*, 398 N.W.2d 140, 142 (S.D.1986), was not required to prove prejudice. Loop's case must be distinguished, however. Loop complained of his counsel's complete failure to pursue an appeal. In *Strickland*, the United States Supreme Court stated that in such instances prejudice was presumed. Luna does not allege he was denied assistance of counsel completely, only that his representation was constitutionally defective. This case therefore is not within the same exception as the *Loop* case fit, nor is it within any other exception under which prejudice is presumed. *See Strickland*, 466 U.S. at 692, 104 S.Ct. at 2067, 80 L.Ed.2d at 696. Luna therefore must prove both constitutionally deficient representation and prejudice.

### Abandoning Motion To Suppress Based On Involuntary Consent

Luna signed a consent to search his home and automobile. As a result of this search, clothing embedded with microscopic glass fragments was discovered. An expert witness called on behalf of the State testified that the glass fragments matched the glass of a window smashed in at the scene of the crime. This was the only direct evidence linking Luna to the crime. Luna's original counsel made a pretrial motion to suppress the glass fragment evidence on the basis Luna was coerced into signing the consent form. Roubideaux

---

2. *Jones v. State*, 353 N.W.2d 781 (S.D.1984).

made a similar motion to suppress (not being aware at that time of the signed consent), but formally withdrew it prior to trial.

Luna argues he was coerced into signing the consent form, and that Roubideaux was ineffective by withdrawing the motion to suppress. He claims his consent was coerced for generally the same circumstances we described in *Luna I.* Namely,

> force or coercive surroundings, promises, threats, verbal abuse and other illegal police actions ... that his mental and emotional state of mind negated the voluntariness of the signed consent and furthermore that he was not properly advised or "Mirandized" prior to his signing the consent.

378 N.W.2d at 235.

■ The State argued at the habeas corpus hearing that we addressed this argument in *Luna I* and the issue is therefore *res judicata.* The trial court rejected this argument, and we agree with its reasoning. As we observed in *Luna I, Strickland*-styled claims ordinarily will not be reviewed on direct appeal. The review in such instances is limited to determining whether representation was " 'so casual that the trial record evidences a manifest usurpation of appellant's constitutional rights.' " *State v. Tchida,* 347 N.W.2d 338, 339 (S.D.1984) (quoting *State v. Phipps,* 318 N.W.2d 128, 131 (S.D.1982)). Since our review in *Luna I* was limited to a search for a "manifest usurpation," it is still open for debate whether trial counsel's performance failed the *Strickland* standards. We therefore will proceed to the merits of Luna's current argument.

■ In *Luna I,* we rejected the argument that Roubideaux' withdrawal of the motion constituted a "manifest usurpation," because this action was consistent with the trial strategy of attempting to show Luna's innocence by demonstrating his cooperation with the police. Luna essentially now argues our reasoning was incorrect because even had the motion to suppress been pursued, the jury would not have been aware of the effort to suppress. Thus, obtaining a ruling on the motion would not have detracted from the cooperativeness defense. We disagree with this argument because had the motion to suppress been pursued, the prosecution would then have had the right to introduce that fact before the jury to rebut Luna's evidence that he fully cooperated with law enforcement officers. *State v. Vega,* 163 Conn. 304, 306 A.2d 855 (1972); *People v. Sturgis,* 58 Ill.2d 211, 317 N.E.2d 545 (1974), *cert. denied,* 420 U.S. 936, 95 S.Ct. 1144, 43 L.Ed.2d 412; *People v. Sturgis,* 14 Ill.App.3d 181, 302 N.E.2d 114 (1973); *State v. Campbell,* 294 N.W.2d 803 (Iowa 1980); *Nelson v. State,* 607 S.W.2d 554 (Tex.Crim.App.1980). Also, in furtherance of his "cooperation" defense, Luna testified at trial that he willingly signed the consent form. In light of this strategy, Roubideaux could not be expected to have Luna testify at the suppression hearing that he was coerced into signing the form. Indeed, had he attempted to testify as to his cooperation at trial, he would have been subject to impeachment by his inconsistent suppression hearing statements. *Id.* Roubideaux's failure to pursue the motion is therefore a proper trial tactic which this court will not second guess. *See State v. Dornbusch,* 384 N.W.2d 682 (1986); *Woods, supra.*

■ Alternatively, even were we to assume Roubideaux's withdrawal of the motion amounted to deficient representation, we would not reverse the habeas corpus court because the deficiency would have been nonprejudicial. As the United States Supreme Court has specifically stated:

> Where defense counsel's failure to litigate a Fourth Amendment claim competently is the principal allegation of ineffectiveness, the defendant must also prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice.

*Kimmelman,* 477 U.S. at ——, 106 S.Ct. at 2583, 91 L.Ed.2d at 319. *See also High Elk v. Solem,* 804 F.2d 496 (8th Cir.1986).

Roubideaux testified at the habeas corpus hearing that one reason he withdrew the motion to suppress was that he believed the motion would be denied. It is important to note that Luna did not inform Roubideaux that he signed the consent to search until after Roubideaux made a motion to suppress the evidence. Even after learning of Luna's consent, Roubideaux considered pursuing the motion under the theory the consent was given involuntarily, but ultimately decided to withdraw the motion because he was convinced this effort would be fruitless. Roubideaux stated his reasons for this conclusion at the habeas corpus hearing.

> [I]n [Luna's] case, he's intelligent, he's been around, he's been in the service, we couldn't convince anybody that he was imposed upon whatsoever. In fact, the totality of the evidence showed that he [signed the consent] not only voluntarily, but willingly and purposely in an attempt to cooperate with the officers to show that he was innocent....

Also, Luna, as stated earlier, testified at the criminal trial that he signed the consent voluntarily. After relating that he had read the consent prior to signing it, Luna's testimony continued:

> Q. Can you remember anything that it said?
> A. Yes, sir, just that I gave them my consent to search my apartment and my vehicle and searching anything they wanted, I guess.
> Q. Were you quite willing to sign that?
> A. Well, I was, yes.

We must presume Luna was telling the truth and would have testified similarly at a suppression hearing. Furthermore, Luna was present at the habeas corpus hearing and had opportunity there to meet his burden of proving a meritorious Fourth Amendment claim by relating the circumstances which supposedly rendered his signing the consent involuntary. He did not testify at that hearing, however. Luna has failed to show a meritorious Fourth Amendment claim and he therefore has not demonstrated he was prejudiced by counsel's abandoning the motion.

Prior to leaving this issue, one final observation bears mention. This case is not like *Kimmelman, supra,* where defense counsel simply by ignorance failed to file a motion to suppress certain evidence. Here, counsel highly experienced in conducting criminal defenses filed a motion to suppress. However, he then *chose to withdraw the motion after considering the pros and cons of the matter.* Counsel reasonably concluded that foregoing the motion was in the line of defense best suited to successfully defend the charges against his client. Under the highly deferential standard of review applicable, we may not hold that Roubideaux' choice was constitutionally defective.

### Failure To File Motion To Suppress Evidence Based On Its Partial Disappearance

■ Luna next argues he was denied effective assistance of counsel when Roubideaux failed to file a motion to suppress the microscopic glass particles on the grounds that some of the particles were missing after the State examined them. According to FBI exhibits, glass particles were found on Luna's shirt, t-shirt, jeans, and a pair of gloves seized from Luna's van. Luna's expert testified that when he received these items the jeans had one less particle than reported in the FBI exhibit, and that the gloves and t-shirt contained no particles.

Luna argues he had a due process right to have evidence derived from the seized particles withheld because the State lost or suppressed the missing particles. If he had no such right he obviously was not prejudiced by his counsel's inaction, and whether such a right existed thus becomes a pivotal issue. In *State v. Clabaugh,* 346 N.W.2d 448 (S.D.1984), we stated

> suppression by the prosecution of evidence favorable to an accused violates due process where the evidence has been requested by the accused and is material either to guilt or punishment, irrespective of the good faith or bad faith of the prosecutor. To fall within the rule, the defendant must make a timely request

for the evidence, the evidence must be in the state's possession, and the evidence must be material and exculpatory. If the evidence was destroyed, making it impossible to show its exculpatory nature, the inability to show that the evidence was exculpatory does not alone defeat a defendant's claim. ... [I]mplicit in the requirement of materiality is a concern that the suppressed evidence might have affected the outcome of the trial.

346 N.W.2d at 450–51 (citations omitted).

An initial flaw in Luna's argument is his inability to establish that State suppressed the missing particle. As we stated in *Luna I*, 378 N.W.2d at 235:

The record discloses a considerable debate between the FBI agent and the defense expert on the proper means of preserving the [glass particle] evidence in question. It appears as equally possible that the defense expert may have lost the charts by his method of handling as that the FBI Lab did not properly preserve them. There is certainly no evidence that anyone else had any responsibility for any loss.

Furthermore, even if we assume the State suppressed the particles, we cannot conclude that the alleged destruction of the evidence violated Luna's due process rights. First, enough of the evidence was present for Luna's expert to reach conclusions regarding its origin and to testify that the remaining fragments could not have come from the scene of the crime. Second, because the glass particles were the only direct evidence linking Luna to the crime, the jury very likely found that the glass fragment evidence was inculpatory. It is extremely doubtful therefore that the missing fragments should be considered exculpatory or that their availability to the defense would have had any effect on the outcome of the trial. The *Clabaugh* elements therefore have not been established.

### Failure To Object To Prosecutor's Closing Remark

■ Luna next alleges he was denied his constitutional right to effective assistance of counsel by Roubideaux's failure to object or request a limiting instruction regarding the following remark by the prosecutor during closing arguments:

[The sheriff] was asked by defense counsel, 'Where does the evidence point?' The answer says, 'It points to the Defendant.' He asked what his opinion was of the Defendant's guilt. The Sheriff responded, 'The Defendant is guilty.' [TT at 2374]

The prosecutor's remarks apparently referred to the following cross-examination of the investigating sheriff by defense counsel:

Q. Okay, Now, is it your position, Mr. Holloway, that you made a complete investigation of this entire crime?

A. Yes, I believe its a very thorough investigation ...

Q. As a matter of fact though all of your efforts were aimed at convicting George Luna, were they not?

A. All of our efforts were aimed at trying to find out who was responsible for the killings of Lynn Luna and Helen Thomas, and my conclusions were that they are the defendant.

Q. And, of course, you could be mistaken too, couldn't you?

A. I don't believe that I am.

Luna cites *United States v. Splain*, 545 F.2d 1131 (8th Cir.1976) and *Zemina v. Solem*, 438 F.Supp. 455 (D.S.D.1977), as authority for his position that the prosecutor's comments were highly improper. Both cases stand for the well-accepted principle that it is improper for a prosecutor to express his personal belief in the guilt of the defendant.

While the remark in question in this case may have been improper, it was not a comment upon which constitutional error may be premised, nor was it the prosecutor's statement of personal belief in Luna's guilt. *See Splain, supra; State v. Wood*, 77 S.D. 120, 86 N.W.2d 530 (1957). Rather, the prosecutor simply repeated, although in a somewhat exaggerated version, the testimony of the sheriff. This testimony was

not elicited on direct examination by the prosecutor, but upon cross-examination by defense counsel. Luna does not argue that defense counsel was deficient in eliciting the testimony referred to, nor for failing to object to the testimony. In any event, the argument would fail, as the testimony was elicited in pursuit of the reasonable trial strategy of attempting to convince the jury that the sheriff's investigation of the case focused upon Luna to the exclusion of other possible suspects.

## DUE PROCESS CLAIM REGARDING PROSECUTOR'S REMARK

 Luna's final argument is that the prosecutor's statement violated his due process rights to a fair trial. When a prosecutor's comments are challenged on due process grounds upon application for habeas corpus relief, the question is "whether the comments, even if improper, rise to the level of constitutional violations." *Zemina,* 438 F.Supp. at 464. While prosecutorial misconduct is not justified, a distinction nevertheless must be drawn "between ordinary trial error of a prosecutor and ... egregious misconduct." *Id.* (quoting *Donnelly v. DeChristoforo,* 416 U.S. 637, 647, 94 S.Ct. 1868, 1873, 40 L.Ed.2d 431, 439 (1974)). Generally, "prejudicial remarks made by a prosecutor to the jury do not give rise to denial of due process." *Zemina,* 438 F.Supp. at 465 (quoting *Maggitt v. Wyrick,* 533 F.2d 383, 387 (8th Cir.1976), *cert. denied,* 429 U.S. 898, 97 S.Ct. 264, 50 L.Ed.2d 183 (1976)). As noted, the comments made in this case were not a statement of the prosecutor's belief in Luna's guilt, and was a reference to testimony elicited on cross-examination by defense counsel. It does not rise to the level of "egregious misconduct" necessary to obtain habeas corpus relief. *See State v. Wood, supra.*

Affirmed.

WUEST, C.J., and MORGAN, J., concur.

SABERS, J., concurs in part and concurs in result in part.

HENDERSON, J., dissents.

SABERS, Justice (concurring in part and concurring in result in part).

I concur on issues 2, 3, and 4. I concur in result only on issue 1.

The withdrawal of the motion to suppress evidence was a mistake. Defendant had nothing to gain and everything to lose by withdrawing the motion. *See* my dissent in *Woods v. Solem,* 405 N.W.2d 59, 65 (S.D.1987).

If the signed consent to search the apartment and van was coerced and involuntary—as stated in defendant's affidavit—all evidence, including glass fragments from clothing, would be suppressed.

I agree with the observation of the trial court judge that pursuing the motion to suppress would not have detracted from trial strategy designed to demonstrate Luna's cooperation. Contrary to the statement in the majority opinion (at p. 659) the jury would *not* have known of the suppression motion. In this instance, the State could not use the defendant's exercise of his constitutional right against him. *Bayer v. Johnson,* 400 N.W.2d 884 (S.D.1987).

It appears to me that the majority's treatment of issue 1 raises more questions than it answers. Is a consent to search valid without *Miranda* rights? Can there be informed waiver or consent (to search) without *Miranda* rights?

The burden is on the State to establish voluntariness by clear and convincing evidence that the search was the result of a free, intelligent, unequivocal and specific consent without any duress or coercion, actual or implied.

*State v. Cody,* 293 N.W.2d 440, 450 (S.D. 1980).

In a custodial arrest, as we have here, an interrogation without *Miranda* rights resulting in a confession is involuntary and subject to suppression. Likewise, the signed consent to search under those circumstances and without *Miranda* rights is involuntary and subject to suppression. *United States v. Trombley,* 563 F.Supp. 564, 566 (E.D.Mich.1983); *United States v. Perez,* 644 F.2d 1299, 1303 (9th Cir.1981).

This constitutes separate violations of the constitution of the State of South Dakota and the United States. The failure to pursue those constitutional violations constitutes ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Experience can be, but is not necessarily, a barrier to ineffective assistance of counsel. In this case, it was not.

HENDERSON, Justice (dissenting).

I respectfully dissent. *See also* my dissent in *State v. Luna*, 378 N.W.2d 229, 239 (S.D.1985). Luna was denied the right to proffer a defense that a man, who later confessed to the killings, was seen approximately one block away, with blood on him, at or about the time of the killings. This evidence was kept from the jury.[1]

Here, I dissent upon the basis that Luna's constitutional rights under the Fourth and Sixth Amendments to the United States Constitution were grossly violated.

Approximately a dozen police officers and detectives were present, with guns drawn, upon arrival at Luna's home. Per the sheriff's recollection, some officers escorted Luna out of his apartment. One police officer, armed with a riot gun and a German shepherd attack dog, stood by. Several police officers held sawed-off shotguns pointing them at Luna. Luna was not Mirandized at the scene. He was shoved against a wall, handcuffed, and then frisked. It is undisputed that Luna was not armed and made no attempt to strike out or make any threatening moves during this factual scenario at his apartment home. Luna was required to sit at the kitchen table, with his wrists in handcuffs, as the officers began to search the bedroom and the living room, all without any permission to so search. Luna heard a deputy sheriff and a police officer discuss the possibility of whether they should be in possession of a search warrant to be doing all of this searching. An officer was sent to go out and do something about getting a search warrant. Deputy Sheriff Gardner filed through Luna's diary and began looking at all of his clothes and shoes for blood. Luna finally wanted to know what it was all about and Deputy Gardner advised him that his wife and mother-in-law had been found beaten to death early that morning. Luna supposedly made the remark "Oh, no, my God." He then began to cry and, according to the officers, appeared on the verge of vomiting. A twelve-year police veteran described Luna as being "shocked." Then, Luna continued in an emotional state by crying and saying over and over, "no, no, no." Additionally, Luna was not permitted to go to the bathroom to splash cold water on his face. He complained of the handcuffs hurting him and Deputy Gardner told another officer to remove them. Luna complained that the handcuffs were so tight that they made "bad burn marks" on his wrists and that his wrists were "blue and purple."

At or about this time, Luna was ordered to sit once again at the kitchen table. Thereupon, he was given a written consent form, namely to consent to search his apartment home. It appears, however, that the search was all but over. Luna signed this document in this coercive atmosphere and without ever having been Mirandized. Approximately one hour after the initial appearance of officers, detectives, vehicles, riot gun, and German shepherd attack dog, Luna was taken to the sheriff's office "for questioning." A blood sample was taken from his body and he was required to remove all of his clothing and turn it over to law enforcement personnel. Thereupon, he was required to submit hair and fingernail samples. Then, for the first time, he was Mirandized and two officers proceeded to conduct a tape-recorded inter-

1. Luna's brief, page five, under "STATEMENT OF CASE" states: "Also, during the trial, Applicant's 'Additional Evidence [of] Third Party Perpetrator' was filed, considered, and the Court denied Applicant the opportunity to offer certain evidence on that issue." It is mentioned, therefore, in this case, and by this author, for historical/procedural background and bears on the fairness of a trial wherein a defendant was ultimately sentenced to serve two life terms on two murder convictions.

view. This was not a consensual search and the totality of the circumstances rendered the consent involuntary. *State v. Cody*, 293 N.W.2d 440 (S.D.1980).

Luna's trial counsel filed a Motion to Suppress on or about April 2, 1984, all concerning the seizure, ostensibly illegal, which seizure was on May 1, 1983, as I have depicted above. Within 72 hours after this motion was made, the Motion to Suppress was abandoned. A basic reason, given by Luna's trial counsel for abandoning this motion, was the fact that the defendant signed a consent to search. In my opinion, such a reason for abandoning the Motion to Suppress was ill conceived and negligent. Glass particle evidence was critical to the State's case and had this Motion to Suppress been granted, and in all legal likelihood it would have been, the glass particle evidence would not have been submitted to the jury. Luna's trial counsel did not render effective assistance of counsel. *Kimmelman v. Morrison*, 477 U.S. 365, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986). In *Kimmelman*, 477 U.S. at ——, 106 S.Ct. at 2583, 91 L.Ed.2d at 319, the United States Supreme Court wrote:

> In order to prevail, the defendant must show both that counsel's representation fell below an objective standard of reasonableness, [*Strickland v. Washington*, 466 U.S. 668, 688, 104 S.Ct. 2052, 2065, 80 L.Ed.2d 674, 693 (1984)], and that there exists a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.*, [466 U.S. at 694, 104 S.Ct. at 2068, 80 L.Ed.2d at 698].

*See also Jones v. State*, 353 N.W.2d 781, 784 (S.D.1984).

In my opinion, Luna's trial counsel made an error which was so serious that he was not functioning as counsel guaranteed under the Sixth Amendment. This performance was deficient and it surely prejudiced Luna's defense. Essentially, this author believes that effective assistance of counsel

was not rendered because trial counsel abandoned the Motion to Suppress. *Kellogg v. Scurr*, 741 F.2d 1099, 1100 (8th Cir.1984). A specific error of trial counsel has been demonstrated under the dictates of *United States v. Cronic*, 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984).

This author is further distressed by the fact that this record reveals that Luna's trial counsel failed to review certain Grand Jury Transcripts; Luna's trial counsel therefore did not know of glass particle evidence until "shortly before trial." This continues to reflect a violation of Sixth Amendment rights.

Finally, Luna's trial counsel, sitting on his chair in the courtroom, as closing arguments took place, failed to make a critical objection and request the court to make an admonition to the jury. In his zeal to convict Luna, the prosecutor, Rodney Lefholz, made a statement in the presence of the jury, which is embodied in the majority opinion. He told the jury that the sheriff had testified that "[t]he Defendant is guilty." Obviously, the sheriff cannot make such a statement because it invades the province of the jury. But the terrible wrong here is this: Lefholz' statement of Sheriff Holloway's testimony was an egregious misstatement of the record and was calculated to superimpose the opinion of guilt of the sheriff over that of the jury.[2] It was a false statement of Sheriff Holloway's testimony. Surely, to obtain "a trial whose result is reliable," an effective lawyer would have objected forthwith so as to prevent the deprivation of a fair trial for the defendant. This was a serious error. It was a deficient performance. It prejudiced Luna. Therefore, when one considers that Luna was first denied a defense altogether and then deprived of Fourth and Sixth Amendment guarantees, it is analytically sound to express that fundamental fairness has not been accorded to Luna in the premises. Each and every defendant

---

**2.** In Luna's brief, issues three and four under "STATEMENT OF ISSUES," Luna zeroes in on trial counsel's failure to object to prosecutor's misstatements during closing arguments. Luna's brief, page thirty-eight, *inter alia*, de-

clares: "Additionally, Applicant submits that this statement to the jury constituted prosecutorial misconduct and violated Applicant's constitutional rights to a fair trial and due process."

is guaranteed a fair trial. U.S. Const. amend. XIV, § 1; S.D. Const. art. VI, § 2. While that trial need not be perfect, it *must* be fair. *See Brown v. United States*, 411 U.S. 223, 231, 93 S.Ct. 1565, 1570, 36 L.Ed.2d 208, 215 (1973).